## SEVERANCE MACHINE

v.

## WOOD STRUCTURES, INC.

Supreme Judicial Court of Maine.

Argued Oct. 5, 1993.
Decided Dec. 30, 1993.

Joel Vincent (orally), Scarborough, for plaintiff.

Richard O'Meara (orally), Christopher Branson, Murray, Plumb & Murray, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

DANA, Justice.

Wood Structures, Inc. appeals from a judgment entered on a jury verdict in the Superior Court (York County, *Fritzsche, J.*) awarding damages to Severance Machine on its claim for a breach of contract. Because we conclude that the court did not err in admitting evidence of Severance Machine's costs, in refusing to instruct the jury that valid and binding "fixed-price" contracts existed, in concluding that Severance Machine proved its damages, and in denying a motion for a judgment as a matter of law, we affirm the judgment.

## I.

Wood Structures manufactures wooden roof and floor trusses. Severance Machine designs and builds specialty machinery, such as conveyer systems and saws, and does repair work. In the spring of 1985, the parties discussed Wood Structures' need for a floor truss stacker. After the parties agreed on a price "not to exceed $31,000," Wood Structures issued a purchase order. While the purchase order specified the price, it contained no details of the design or components of the floor truss stacker.

In the fall of 1985, Severance Machine also agreed to design and manufacture three roof truss stackers for Wood Structures, referred to as stackers A, B, and C. At that time, the parties also agreed that any work to be performed by Severance Machine for Wood Structures would require a written purchase order. In a November 1985 letter, John Applin, Wood Structures' vice-president, confirmed this agreement as follows: "all future work, engineering, estimating or actual construction of equipment must have a purchase order issued."

Wood Structures issued a purchase order to Severance Machine in April 1986, authorizing the manufacture of stacker A for $32,140 and stackers B and C for $26,200 each. Again, the purchase order contained only the prices.

Severance Machine completed stackers A and C first. In addition to paying the amounts specified in the purchase order, Wood Structures paid invoices submitted by Severance Machine for $20,063.66 for an "extra" charge for the hydraulic safety features on stackers A and C, $3,104.00 for "extra" equipment on stacker A, and $13,432.45 for the installation of stackers A and C. There were no separate purchase orders authorizing these additional amounts.

In February 1987, the parties agreed to a new "firm price" of $50,000 for stacker B, for which Wood Structures issued a new purchase order. At that time the parties "reaffirmed" the purchase order requirement. As Benjamin Severance, the principal of Severance Machine, testified, "my understanding [was] that I would need a purchase order in order to get paid." Severance also testified, however, that he believed he could charge above the purchase order price once the purchase order had been issued, thus implying that he was working on a time and materials basis. In contrast, Applin testified that the purchase order requirement meant that the $50,000 price would be "fixed" unless Severance requested a new purchase order.

The major portion of the floor truss stacker was delivered to Wood Structures in July 1987. By August 1987, Wood Structures had paid a total of $31,000 for the floor truss stacker, the amount specified in the 1985 purchase order. Severance testified, however, that he discussed price increases with Applin based on design changes that Applin had authorized. Severance further testified that Applin assured him that the additional costs would be paid. This Applin denied.

Severance Machine delivered stacker B to Wood Structures in June or July 1988. Again, Wood Structures paid the $50,000 set forth in the purchase order. After stacker B was installed, Wood Structures discovered that it destroyed the roof trusses during the stacking process. To remedy this, Severance Machine designed a "lift and move" system. While Wood Structures viewed this as remedial work and part of the $50,000 purchase order, Severance believed this modification was extra work. Severance admitted that he neither requested nor received a purchase order for the modification. Severance testified, however, that he presented computer printouts to Applin detailing the increased charges.

In December 1988, Severance sent two invoices to Wood Structures demanding additional payments for the floor truss stacker and for stacker B. Severance testified that these additional amounts covered the modifications to the design of the floor truss stacker and stacker B. After Wood Structures refused to pay, Severance Machine filed a complaint for a breach of contract and for unjust enrichment.

After Severance Machine presented its case, Wood Structures moved for a judgment as a matter of law which the court granted with respect to the unjust enrichment claim but denied with respect to the breach of

contract claim. After the parties rested, the court instructed the jury that it must decide "whether or not a contract was formed which modified any earlier agreements" regarding the two stackers. The court then instructed the jury as to the elements of a contract, and concluded that "[a]bsent a new contract which modifies or terminates an older contract, the parties are bound by all terms of the earlier contract." Wood Structures maintained that the jury should have been instructed that there was no issue regarding the existence of valid and binding contracts for the floor truss stacker and stacker B, and objected to the instructions on that basis.

The jury found that the parties had modified their earlier agreements for the two pieces of equipment and that Wood Structures breached those modified contracts. The jury further found that as a result of these breaches, Severance Machine suffered damages in the amount of $22,818.50 for the floor truss stacker and $22,378.70 for stacker B. The court subsequently denied Wood Structures' motion for a judgment as a matter of law.

## II.

■ When reviewing a trial court's denial of a motion for a judgment as a matter of law, we determine whether by any reasonable view of the evidence, including the inferences to be drawn therefrom, taken in the light most favorable to the non-moving party, the verdict can be sustained. *Ames v. Dipietro–Kay Corp.,* 617 A.2d 559, 561 (Me.1992). The judgment in favor of the non-moving party must stand unless it is clearly erroneous. *Id.*

The jury was presented with a factual dispute concerning the terms of the parties' agreements for the floor truss stacker and stacker B. Wood Structures presented evidence that the purchase order procedure precluded the parties from modifying the contract price through any other means. Severance Machine presented evidence that the parties operated on a time and materials basis in that Severance Machine could charge whatever it took to complete a job and Wood Structures would pay those charges.

■ Taking the evidence in the light most favorable to Severance Machine, a reasonable view of the evidence supports the jury's finding that Wood Structures breached the modified contract and was liable for Severance Machine's time and materials in excess of the amount already paid. Therefore, we affirm the trial court's denial of Wood Structures' motion.

■ Moreover, we reject Wood Structures' argument that there was insufficient evidence supporting the damage award. "A damage award will be disturbed only when it is plain that there is no rational basis upon which the amount of the award may be supported. A rational basis exists if there is any competent evidence in the record to support it." *Bourette v. Dresser Indus., Inc.,* 481 A.2d 170, 174 (Me.1984) (citations omitted). Because the jury rationally could have concluded that the parties had entered into a time and materials agreement, it could also conclude that Severance Machine's damage equalled the total amount of time and materials minus the amount already paid. We therefore decline to vacate the judgment with respect to the damage award.

■ We also reject Wood Structures' contention that the trial court erred in admitting evidence of Severance Machine's total costs for manufacturing the two stackers. This evidence was relevant to show Severance Machine's damage for a breach of contract and was therefore admissible pursuant to M.R.Evid. 402.

■ Finally, Wood Structures argues that the trial court erred by refusing to instruct the jury that valid and binding contracts existed for both stackers. Severance Machine argues that the court did instruct the jury that there were original or prior contracts between the parties. In fact, throughout the court's instructions, there are numerous references to the "original contracts" and "earlier agreements." The special verdict form asked the jury to determine whether a new contract had been formed that "modified any earlier agreement[s]" regarding the floor truss stacker and stacker B.

We conclude that the jury instructions adequately explained the legal situation to the

jury and, contrary to Wood Structures' assertion, specified the existence of previous agreements regarding the stackers. The court did not abuse its discretion in refusing to include Wood Structures' proffered instruction. *See Pelkey v. Canadian Pac. Ltd.,* 586 A.2d 1248, 1251 (Me.1991) ("If the instructions given by the trial court are substantially correct and the legal situation is made clear to the jury, the trial court's decision not to amplify or further explain an instruction in the context of the facts of a particular case will not constitute reversible error absent a showing of an abuse of discretion.").

The entry is:

Judgment affirmed.

All concurring.