**Dorothy DILLINGHAM**

v.

**Philip J. RYAN et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs Nov. 14, 1994.
Decided Dec. 20, 1994.

Brian C. Hawkins, Russell B. Boisvert, Hawkins & Boisvert, Bridgton, for plaintiff.

Thomas F. Hallett, Stephen H. MacKenzie, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

DANA, Justice.

Philip and Jacqueline Ryan appeal from a judgment establishing the northern and eastern boundaries of their property and awarding damages to Dorothy Dillingham after a bench trial in the Superior Court (Cumberland County, *Crowley, J.*). The Ryans contend that the trial court erred in determining the eastern boundary of their property and in awarding damages to Dillingham based on an unapportioned amount. Because we agree with the Ryans that their eastern boundary runs along the old Songo River Road, we remand to the Superior Court to amend the judgment.

*Facts*

A 1930 deed carved the Ryans' property out of a larger parcel owned by the Dillingham family. The deed reads in pertinent part:

Beginning at the highway draw-bridge at Songo River Road and thence in a northerly direction one hundred fifty (150) feet, more or less, to a wire fence; thence westerly by the line of said wire fence to the Songo River; thence south and southeasterly by the bank of said river to the said drawbridge and the point of beginning.

In 1930 the Songo Locks Road was a gravel road that traveled in a northeasterly direction from the bridge. In 1939 a new Songo Locks Road was proposed. The new road, which is paved and runs in a northerly direction from the bridge, is commonly used and provides access to the Ryans' property. The old road, however, is still the road recognized by the Town of Naples.[1]

In 1981 the Ryans hired a surveyor, Ronald Keniston, to determine the location of the northern boundary line between the Ryans and Dillingham. The eastern property line on Keniston's survey ran northerly from the bridge along the new road. Although the Ryans felt that the northerly property line shown to them before they purchased the parcel in 1964 was located farther to the north, they did not seek another survey at that time. Shortly after completing his survey Keniston became aware that the Songo Locks Road had been relocated. In a letter to the Ryans dated August 24, 1981, Keniston stated that his survey should be expanded to show that the Ryans own a piece of property on the easterly side of the new Songo Locks Road. Keniston stated that

"the dirt road going to the right after the bridge was probably the road ment (sic) in the deed recorded in book 1358 page 400." He characterized the letter as "a matter of record showing my plan of August 12, 1981 is not representing all the land that I feel you do own." The disputed triangular parcel is referred to in this litigation as the "heater piece" or "heater parcel."[2]

In 1984, to properly effectuate a subdivision of their property, the Ryans engaged Keniston to update his 1981 survey to show the two new lots the Ryans wanted to create along the river. The subdivision plan was subsequently approved and recorded. The Ryans planned to sell the two new lots and to retain a parcel containing a boathouse in which they planned to live during part of each year. The Ryans constructed a driveway along their northern boundary line to access the boathouse. They began construction of the driveway in 1984 by removing timber and stumps, and by excavating and leveling the land.

In 1990 Dillingham filed suit against the Ryans on quiet title and trespass actions. The Ryans counterclaimed to quiet title, and the case was tried in July 1993 as if it were a declaratory judgment action.[3] The trial court determined the Ryans' northern and eastern boundaries. The court also found, based on the established northern boundary, that the Ryans had willfully removed trees and gravel from Dillingham's land north of the adjudicated line. Therefore, the court assessed treble damages against the Ryans pursuant to 14 M.R.S.A. § 7552 (Supp.1993). It calculated the damages assessed on the basis of the total amount of timber and grav-

---

1. Although the new road is commonly used, in 1983 the Town of Naples rejected "adoption" of the new Songo Locks Road and voted to keep the old gravel road.

2. A 1990 survey by Lawrence Kane shows the Ryans' eastern boundary fronting on the old road, and the heater parcel is therefore shown to be part of the Ryans' property. Mr. Ryan testified that he maintained a mailbox on the heater parcel and his son parked a truck there to sell wood during summer months.

3. In 1990 Dillingham filed a complaint against the Ryans for trespass and to quiet title pursuant

to 14 M.R.S.A. §§ 6651–6654 (1980) (Summary Proceedings to Quiet Title). The Ryans filed a counterclaim to quiet title pursuant to sections 6651–6654. Apparently recognizing the procedural pitfalls posed by the state of the pleadings in this boundary line dispute, the parties agreed to proceed as if the complaint were for a declaratory judgment. For an analysis of the "arcane intricacies" of this so-called action at law to quiet title, see *Chickering v. Yates*, 420 A.2d 1219 (Me.1980); *Hodgdon v. Campbell*, 411 A.2d 667 (Me.1980); *see also* Comment, *Maine's Actions to Try Title: A Historical Perspective*, 32 Me.L.Rev. 355 (1980).

el removed from the area on both sides of the boundary. Neither party offered specific evidence at the trial regarding the amount of timber and gravel removed from either the Dillingham or the Ryan side of the boundary.

## The Eastern Boundary

■ "What boundaries a deed refers to is a question of law but where those boundaries exist on the face of the earth is a question of fact." *Milligan v. Milligan,* 624 A.2d 474, 477 (Me.1993). When interpreting a deed, a court should first look for the controlling intent of the parties on the face of the deed. *Id.* The intent of the parties may not be clear from the face of the deed, however, if that deed contains a latent ambiguity. *Id.* A latent ambiguity in a deed is "created when, in applying the description to the ground, facts extrinsic to the document controvert or in some way render unclear the deed's apparently unambiguous terms." *Id.* (quoting *Taylor v. Hanson,* 541 A.2d 155, 157 (Me.1988)). When the language of a deed is susceptible of more than one meaning, the trial court must determine the grantor's intent from contemporaneous circumstances and from the standard rules of construction. *Milligan,* 624 A.2d at 477.

■ In the case before us, the ambiguity is whether the first call follows the old Songo Locks Road. If the first call ran due north from the bridge, as the trial-court determined, rather than northeasterly along the old road, the parcel created in 1930 would have been effectively landlocked. According to the standard rules of construction, boundaries are controlled, in descending priority, by monuments, course, distances, and quantity unless this produces a result that is absurd or manifestly inconsistent with the parties' intentions. *Id.* at 478. We have stated in a different context that we will presume "that the parties intended the owner of the dominant estate to have a way to his property without trespassing." *LeMay v. Anderson,* 397 A.2d 984, 989 (Me.1979) (finding an easement by necessity). A similar presumption premises our analysis in the instant case.

4. The damage issue is unaffected by the trial court's error in determining the eastern bound-

■ By construing the Ryans' deed to landlock their property, the trial court overlooked a basic rule of construction and achieved a result that is inconsistent with the presumed intent of the parties. According to the trial testimony of the surveyors, Keniston and Kane, and the title attorney, Smith, the presumption that a parcel shall not be landlocked is axiomatic to the work of surveyors and title examiners. There is no evidence that the creator of the parcel, or any successor-in-title, intended to landlock the property. Additionally, the deed call of "northerly" is not inconsistent with a northeast direction. We conclude, therefore, that the parties intended the first call of the deed to follow the old Songo Locks Road.

## The Damage Award

■ The Ryans do not dispute on appeal that they are liable for treble damages pursuant to 14 M.R.S.A. § 7552 based on the willful removal of timber and gravel from Dillingham's land beyond the Ryans' northern boundary.[4] They argue, however, that it was error for the court to calculate damages based on the total amount of timber and gravel removed from the entire disputed area because there was no specific evidence regarding the amount of timber and gravel removed from either the Dillingham or the Ryan side of the boundary. The trial court found that, because the Ryans' removal of the tree stumps had the inevitable effect of concealing the damage, they should bear the burden of any uncertainty about the precise extent of the damages suffered by Dillingham. The court further found that

> the defendants had it within their power to obtain and present additional evidence at trial, since the damages were caused by the defendants' own contractors. Such evidence would have resolved any uncertainty about the amount of damages inflicted in their favor. They should not complain that their failure to present such evidence resulted in a less precise determination of the extent of damages.

ary because no timber or gravel was removed from the heater parcel.

"A damage award will be disturbed only when it is plain that there is no rational basis upon which the award may be supported. A rational basis exists if there is any competent evidence in the record to support it." *Severance Mach. v. Wood Structures, Inc.*, 635 A.2d 362, 364 (Me.1993) (quoting *Bourette v. Dresser Indus., Inc.*, 481 A.2d 170, 174 (Me.1984)). The plaintiff is only required to prove the amount of damages with positive facts or on evidence from which their existence and amount may be determined to a probability. *Titcomb v. Saco Mobile Home Sales*, 544 A.2d 754, 758 (Me. 1988).

Evidence at trial showed that approximately 33 cords of wood and between 2,000 and 3,000 yards of gravel were removed from the disputed area. This evidence satisfies Dillingham's burden pursuant to *Titcomb.* The Ryans, on the other hand, offered no specific evidence regarding the amount of timber and gravel removed from either the Dillingham or the Ryan side of the boundary. The Ryans bore the burden of producing this evidence, because the Ryans' actions created the uncertainty with respect to the amount of damages. "The wrongdoer is not entitled to complain that [the damages] cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.... [T]he risk of the uncertainty should be thrown upon the wrongdoer, instead of upon the injured party." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 251, 75 L.Ed. 544 (1931) (citations omitted); *see Thermo Electron Corp. v. Schiavone Constr. Co.*, 958 F.2d 1158, 1167 (1st Cir.1992) (cita-

tions omitted) ("where the defendant's wrongdoing [has] created the risk of uncertainty, the defendant cannot complain about imprecision"). The trial court acted within its discretion in awarding damages to Dillingham based on the full amount of the timber and gravel that was removed by the Ryans.[5]

### Attorney Fees

Dillingham seeks attorney fees pursuant to 14 M.R.S.A. § 7552 (Supp.1993). "In the section 7552 circumstance of deliberate trespass, ... the award of costs and fees is mandated to relieve the successful plaintiff of the cost of litigation. In the circumstance of an unsuccessful appeal by a violator of section 7552, an award of attorney fees is mandatory."[6] *Winslow v. Merrifield*, 538 A.2d 283, 284 (Me.1988). Accordingly, an award of attorney fees with respect to the Ryans' appeal of the amount of the damage award is mandatory.

The entry is:

Judgment on count I vacated. Remanded with instruction to enter a judgment declaring that the eastern boundary of the defendants' land runs northerly along the old Songo Locks Road to the point at which said road intersects the northern boundary between the land of the plaintiff and the defendants. The northern boundary between the land of the plaintiff and the defendants is the line as depicted on the Keniston Plan and as extended easterly to intersect with the old Songo Locks Road.

Judgment on count II affirmed. The court shall award additional attorney fees to the

---

5. There is no merit to the Ryans' argument that they could not have presented more specific evidence at trial regarding the amount of timber and gravel removed from the Dillingham side of the boundary because the Ryan/Dillingham boundary was not established until after the trial. The boundary adopted by the trial court was the line depicted in the Ryans' own recorded survey (the Keniston Plan). The Ryans were well aware of the location of this line on the face of the earth, and nothing prevented them from introducing evidence at trial to support their contention that a given percentage of the trees and gravel were removed from land located south of this line.

6. 14 M.R.S.A. § 7552 provides in part:

Whoever cuts down, destroys, injures or carries away any ... timber ... from land not that person's own, without license of the owner ... is liable in damages to the owner in a civil action. If such an act or such acts are committed willfully or knowingly, the defendant is liable to the owner in treble damages and, in addition, for the cost of any professional services necessary for the determination of damages, for attorney's fees, and for court costs.

14 M.R.S.A. § 7552 (Supp.1993).

plaintiff for the cost of defending the appeal on count II.

All concurring.