STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, SS.                                    Docket No. RE-98-52

FILED AND ENTERED
SUPERIOR COURT

MAY 1 8 2001

PENOBSCOT COUNTY

Howard A. Hartwell et al.,          )
        Plaintiffs                  )
                                    )
                                    )
        v.                          )    **DECISION AND JUDGMENT**
                                    )
                                    )
Town of Medway et al.,              )
        Defendants                  )


Hearing on the plaintiffs' complaint was held on January 4, 5 and 19, 2001. On each hearing date, the plaintiffs, plaintiffs' counsel, defendant Carroll Stanley and Stanley's counsel were present. Neither the defendant Town of Medway nor its counsel appeared or participated at trial.[1] Following the trial, the parties submitted written argument, which the court has considered.

The plaintiffs (collectively, "Hartwell") hold legal title to lot 1 in Tract Z, located in Medway. Lot 1 sits in the northeast portion of Tract Z, which was established in 1844. Defendant Carroll Stanley ("Stanley") owns lot 2 (which is the adjacent lot situated to the south of lot 1), lot 3 (which adjoins lot 1 to the east of lot 1) and the northern portion of lot 4 (which is located to the southeast of lot 1 and which shares a common corner with lots 1, 2 and 3). In this proceeding, Hartwell contends that the Stanley

---

[1] A representative of the Town testified at trial under a subpoena. Her appearance in that capacity, however, was not intended to constitute the formal attendance of the Town as a party.

1

Road, which traverses lot 3, is a public way and provides him with a right of access to his property, which is otherwise landlocked. For the reasons set out below, the court concludes that the Stanley Road is a public road -- at least to the point where it intersects with the rangeway -- but that the Stanley Road does not intersect with lot 1. However, the court further concludes that Hartwell has a right of access over the rangeway that, in turn, provides him with access between lot 1 and the Stanley Road.

## A. Location of the Stanley Road

Hartwell argues that the Stanley Road provides direct access to lot 1. The court is persuaded, however, that in fact the Stanley Road runs across lot 3, the northwest corner of lot 4 and then into lot 2. Lots 2 and 3 and the northern portion of lot 4 (namely, that part of lot 4 over which the Stanley Road runs) are all owned by Stanley. The evidence demonstrates that the Stanley Road does not provide direct access to lot 1. In fact, the center of the Stanley Road is approximately 60 feet from the nearest point on lot 1, which is the lot's southeast corner. Because the Stanley Road is roughly 18 feet wide in that area, lot 1 is no less than approximately 40 feet from the edge of the road.

The court largely bases this factual finding, *see Rhoda v. Fitzpatrick*, 655 A.2d 357, 359 (Me. 1995) (location of boundaries on the face of the earth is a finding of fact), on the testimony of David Cook, the defendant's expert surveyor. Although Cook was faced with the several issues used by Hartwell to challenge his opinion, his analysis and conclusions represent the best available integration of the various data that are relevant to the location of lot 1 in relation to the Stanley Road. For example, Cook was able to establish a nearly straight line representing the rangeway. Cook

2

was sensible in concluding that the landmarks used to establish that line represented the center of the rangeway. That line is less likely to demark either the northern or southern edge of the rangeway because of the lack of symmetry inherent in that approach. When a single line has been found to identify the location of a strip, it is more reasonable to conclude that the line represents the center of the strip, thus not requiring a guess of whether the line represents one edge or the other.[2]

It is worth noting that in that original plan, lot 1 was described as 100 acres in size. In fact, as Cook has marked the boundaries for lot 1, it is 108 acres. Therefore, the lines established by Cook are generous to Hartwell. If the eastern and southern boundaries of lot 1 were moved easterly or southerly, then lot 1 would be closer to the Stanley Road and, if moved far enough, might even intersect the Stanley Road. However, such a reconfiguration would also increase the deviation between the originally designated size of lot 1 and the size of that lot in Cook's survey. This result would compromise the importance of the quantitative reference found in plaintiff's exhibit 1. *See Dillingham v. Ryan*, 651 A.2d 833, 836 (Me. 1994).

Despite Hartwell's argument to the contrary, the court is also satisfied that the stream and horseback that are shown on plaintiff's exhibit 1 (a copy of the original plan for the lots in Tract Z) cannot be used

---

[2]If the line established by Cook represented the northern edge of the rangeway, then the southeast corner of lot 1 would be closer to the Stanley Road. However, even in that circumstance, the Stanley Road still would not provide access to lot 1. Further, that configuration would increase the size of lot 1 even further beyond its quantitative description found in the original subdivision plan than Cook has found. *See* text *infra*.

Alternatively, if the line established by Cook represented the southern edge of the rangeway, then the Stanley Road would be even more distant from lot 1 than Cook has anticipated.

3

properly as monuments.

The court has considered Hartwell's remaining challenges to Cook's opinion. Based on Cook's testimony and the other factors noted in this order, the court concludes that the Stanley Road does not traverse or intersect with Hartwell's property.

## B. Character of the Stanley Road

The evidential focus of the trial was whether the Stanley Road is a public way and thus one over which Hartwell has a right of access. While the evidence does not clearly support either party's position, the court finds the likelihood that the Stanley Road is a public road.

The most persuasive evidence is found in the syllogism created by plaintiff's exhibits 3, 4, 6, 7 and 12. In the 1930's, Mrs. Bradford Lee owned lot 3. Plaintiff's exhibit 7. As of that time, a "town road" crossed over her land. Plaintiff's exhibit 6. There is no meaningful evidence that any road other than the Stanley Road has existed on lot 3. Further, in 1878 or 1879, the Town of Medway accepted a road laid out by one R.W. Lee. Plaintiff's exhibits 3 and 4. In 1873, R.W. Lee had executed a bond for a deed to the northern portion of lot 3. Plaintiff's exhibit 12. From this documentary evidence, the court is satisfied that the road accepted by the Town in the late nineteenth century was the Stanley Road.

Stanley has identified flaws in this factual analysis. For example, R.W. Lee is not included in the chain of title for lot 3. Nonetheless, whether or not the interest was recorded, he acquired an inchoate interest in the property through the bond for a deed. *See* plaintiff's exhibit 12. Also, the evidence shows that Lee was a record owner of real property in Medway in the 1870's. An old map (defendant's exhibit 14) suggests that the

4

property of R.Lee may have been a parcel other than lot 3. The trial record, however, reveals nothing about origins of this map, the date of its creation, its cartographer, the informational basis used by the cartographer or any other data that would afford some basis on which to determine the map's reliability. Further, the description of the location of R.W. Lee's road does not correspond to any road in the area where, according to defendant's exhibit 14, his property was purportedly situated.

Therefore, notwithstanding the legitimate issues that Stanley raises, the court finds that the Town accepted the Stanley Road as a municipal or public way. The trial record also establishes that the Town has not discontinued the Stanley Road. *See* 23 M.R.S.A. § 3026.

Collateral evidence regarding the use of the Stanley Road provides corroborative proof that it is a public road. For example, during much of the time (as late as the 1970's) when school-age children lived at the Stanley Farm located on lot 2, the public school bus would pick them up at that residence. Currently, the school bus goes as far on the Stanley Road as the residence where such children live (namely, the Thomas Stanley residence, located on lot 3). The trial record also establishes that the Town assumed considerable responsibility for maintaining and plowing the Stanley Road. The seasonal maintenance work included grading and adding gravel where needed. In 1980, the Town committed to "continue the practice," namely, maintaining the Stanley Road. *See* plaintiff's exhibit 10 (article 28). While it is clear that members of the Stanley family also performed some work on the road, the extent of the Town's responsibility was considerable, and none of the Stanley family members raised any objection to the Town's continuing efforts to maintain and improve the

5

road. (Indeed, prior to 1996, neither Stanley nor members of his family asserted a private interest in the Stanley Road, although inquiries had been made about access over the road and although the Town had had considerable involvement in its maintenance.)

It is also noteworthy that the Town has paved part of the Stanley Road. The pavement ends near the current residence of Jeff Stanley, and, from this, Stanley argues that only a portion of the Stanley Road could be regarded as a public way. However, the evidence does not disclose any persuasively legitimate basis on which to segregate the Stanley Road into public and private sections over lot 3. In combination with the other factors noted herein, municipal maintenance of the Stanley Road up to at least the intersection with the rangeway makes it more likely than not that the character of the Stanley Road is uniformly public as it traverses lot 3.

## C. Hartwell's rights to the rangeway

For the reasons set out in the first section of this order, the court finds that the Stanley Road does not intersect with lot 1 and therefore by itself cannot provide Hartwell with access to that parcel. In order to gain that access, Hartwell would need the right to use a short section of the four rod rangeway that runs between lots 3 and 4 to get from the Stanley Road to lot 1.

A "rangeway" is a "strip[] of land . . . along all or part of the lots laid out [by the developer]. . . .The purpose of range-ways appears to have been to provide potential access from the various proprietors' lots to the roads and rivers used for commerce." Knud E. Hermanson & Donald R. Richards, *Maine Roads and Easements* , 48 MAINE LAW REVIEW 197, 207 (1996). *See also Glidden v. Belden*, 684 A.2d 1306, 1312-1313 (Me. 1996).

6

Relying on 23 M.R.S.A. § 3032, Stanley contends that Hartwell's rights to that portion of the rangeway adjacent to lots 2 and 4 have been extinguished by operation of statute and that as a result, even if the Stanley Road is a public way, he still cannot get onto his property.[3]

When a proposed, unaccepted way is deemed to be vacated under section 3032, however, that vacation is not sufficient to terminate the private interests that may inhere in the way. Rather, after the public's incipient rights in a way are deemed vacated under section 3032, then the determination and disposition of private rights in the way become controlled by section 3033. 23 M.R.S.A. §§ 3032(1), 3033(1); *Glidden*, 684 A.2d at 1315. Under section 3033, a person who claims to privately own a proposed, unaccepted way must record a notice of that claim with the appropriate registry of deeds. 23 M.R.S.A. § 3033(1). Additionally, the claimant must mail a copy of the notice to the current record owners and mortgagees of the parcels located in the subdivision where the ways were planned. *Id.* The statute prescribes the text of the notice that must be recorded and mailed. *Id.* In this way, persons affected by the claim are given actual or constructive notice of that claim. Failure to respond to the

---

[3]Hartwell argues that, if his other arguments fail, there would exist an easement by necessity that would provide him with access to lot 1 over the rangeway. This claim was identified as an issue for trial in the pretrial order governing this matter, and the parties presented evidence that was relevant only to this issue. The claim of an easement by necessity was therefore tried by consent. M.R.Civ.P. 15(b); *Bernier v. Merrill Air Engineers*, 2001 Me 17, ¶¶ 22, 24, ___ A.2d ___, ___.

An easement by necessity can exist only where the necessity existed at the time of severance. *Frederick v. Consolidated Waste Services, Inc.*, 573 A.2d 387, 389 (Me. 1990). Here, lots 1 and 2 were severed from lot 3 in 1857. Because the owners of lots 1 and 2 had rights of access over the rangeway in 1857, it was not necessary to imply the existence of an easement by necessity at that time. Thus, there is no easement by necessity today.

claim within a specific time period results in a termination of their rights in the way. 23 M.R.S.A. § 3033(2). Here, there is no evidence that Stanley has complied with the statutory procedure that could result in the termination of the private interests in the rangeway that otherwise are held by owners of property within Tract Z. Therefore, Hartwell's private interest in the rangeway has not been terminated under section 3032.[4]

Although not expressly argued,[5] Stanley also may be seen to contend that Hartwell's private interests in the rangeway were terminated under 23 M.R.S.A. § 3031(2).[6] The evidence establishes that the rangeway was not constructed within 20 years of the date when the plan was recorded and that any private rights created in the plan were not constructed and utilized as private rights within the same period. On this predicate, it might be argued that all private rights-of-way to the rangeway -- including any private rights that Hartwell may have had -- have terminated under the provisions of section 3031(2). If Hartwell's right of access over the rangeway were terminated in this way, the owners of parcels abutting the rangeway now own to the center of the section of

---

[4]This argument forms the core of Stanley's motion for summary judgment filed shortly prior to the trial in this case. Because the trial was held well within Hartwell's time to respond to Stanley's motion and because Stanley raised the issues presented in his motion at the trial itself, the merits of the summary judgment motion were merged into the parties' presentations on the trial evidence. As a result, Hartwell was not required to file a response to the motion under rules 7 and 56.

[5]Stanley's argument is grounded on an analysis of section 3032. In his written argument, however, Hartwell considers the application of section 3031, and the court therefore addresses that statute here.

[6]Section 303I(1) governs *public* rights (and the termination of those public rights) to ways that are laid out in a subdivision plan. Here, Hartwell has disclaimed any argument that the rangeway in Tract Z is encumbered by rights of public access.

8

the rangeway that abuts their land. 23 M.R.S.A. § 3031(2); *see also* 33 M.R.S.A. § 465. This would mean that Hartwell would not be entitled to use the section of the rangeway that connects lot 1 with the Stanley Road.

The question raised by this issue is whether section 3031(2) applies retroactively from its effective date of September 29, 1987. If section 3031 were applied retroactively, then when section 3031 became effective, it had the immediate effect of terminating all private rights-of-way over roads laid out in plans if those roads had not been constructed and used as such within 20 years of the date the plan was recorded. In this case, the plan for Tract Z was recorded on August 23, 1844. Under a retroactive application of section 3031, on September 29, 1987 (the effective date of section 3031), Hartwell's private right-of-way over the rangeway was deemed to have been terminated in 1864 (20 years subsequent to the recording date).

The question of whether section 3031 has retrospective application requires the court to construe that statute and other related provisions. Statutory interpretation is a matter of law. *Estate of Spear*, 1997 ME 15, ¶ 6, 689 A.2d 590, 591. In interpreting a statute, the court reads the plain meaning of the statutory language in order to give effect to the intent of the legislature. *Id.* "Words must be given meaning and not treated as meaningless and superfluous." *Stromberg-Carlson Corp. v. State Tax Assessor*, 2001 ME 11, ¶ 9, 765 A.2d 566, 569. Furthermore, the court must "remain mindful of the whole statutory scheme, of which the section at issue forms a part, so that a harmonious result may be achieved." *State v. Seamen's Club*, 1997 ME 70, ¶ 14, 691 A.2d 1248, 1252. Drawing on these principles of statutory construction, the court concludes that section

9

3031 does not have retroactive application and that it has not extinguished Hartwell's private right-of-way over that portion of the rangeway that runs between lot 1 and the Stanley Road. This conclusion is based on both the framework by which private rights are terminated under other statutory provisions included in this subchapter, and on the words themselves used by the legislature.

Title 23 M.R.S.A. § 3021 *et seq.* governs the manner in which both public and private rights to a way may be terminated, both by overt acts and by operation of statute. As is discussed above, in sections 3032 and 3033, the legislature has identified a set of circumstances under which both public and private rights are terminated. By its own terms, section 3032 is retroactive in application. 23 M.R.S.A. § 3032(1) ("A proposed, unaccepted way . . . laid out in a subdivision plan recorded in the registry of deeds *prior to the effective date of this section . . .* " (emphasis added)). Although the statute therefore affects proposed, unaccepted ways regardless of the date when the subdivision plan was recorded, the effective vacation date for any particular way was at least ten years after the statute's effective date. *Id.* Then, in section 3033, the legislature created a separate process for the confirmation or adjudication of any private rights in those ways that are deemed abandoned pursuant to section 3032. That process requires any private claimant to provide actual or constructive notice to other persons who might be affected by that assertion of a private right (namely, owners and mortgagees of parcels located in the subdivision): first, the claimant is required to record a notice of that claim in the appropriate registry of deeds; and, second, the claimant is required to send a copy of that notice of claim by regular mail to persons

10

who might be affected by the claim. 23 M.R.S.A. § 3033(1). The rights of any person who receives notice of that claim are extinguished if not asserted within 180 days of the recording in the registry. 23 M.R.S.A. § 3033(2).

Similarly, section 3027-A creates a method for a municipality to take affirmative steps to vacate an unaccepted way that is described in a recorded subdivision plan. The town must give lot owners the "best practicable notice" as defined in section 3026(2). 23 M.R.S.A. § 3027(1).

The statutory processes established in sections 3027-A, 3032 and 3033 reveal a strong legislative interest in ensuring that persons whose private rights (including rights of way) are subject to termination are the beneficiaries either of actual notice or of efforts that are likely to provide actual notice. Further, the legislature has given those persons a considerable opportunity to act in protection of their interests. At the very least, private rights could not be terminated under section 3032 and 3033 until at least ten and a half years elapsed from the effective date of the statute. 23 M.R.S.A. § 3031(1)(A). A retroactive application of section 3031 defeats this apparent legislative objective, because it would deprive persons such as Hartwell both of any notice of the potential fate of their private interests and also of any opportunity to take steps to protect those interests.

Additionally, as is noted above, the express language of section 3032 renders that statute applicable to subdivision plans recorded prior to the effective date of that law (even though the consequences of the statute would not be felt until many years had passed after that effective date). Section 3031, on the other hand, does not include any language that would

11

suggest retrospective application. The legislature's ability and willingness to include such language in one provision suggests that the omission of that language from the immediately preceding statutory section was deliberate and indicative of an intent that section 3031 was prospective in nature.

In *Glidden*, the Law Court construed and applied section 3032. *Glidden*, 684 A.2d at 1314-16. In its analysis, the Court noted that the enactment that includes sections 3031-35 was intended to apply retroactively. *Id.* at 1314. That observation, however, was *dictum* to the extent that it might relate to section 3031. Further, the prospective application of section 3031 will not defeat the legislature's stated objective of "enhancing the merits of title to land" through the elimination of claims to unaccepted and unconstructed ways. 23 M.R.S.A. § 3035. As is noted above, the legislature itself has built considerable delay into the process by which public and private claims can be terminated by passive operation of statute. The lack of immediacy resulting from a prospective application of section 3031 is not inconsistent with the legislature's own approach created in sections 3032 and 3033.

Therefore, the court concludes that the Stanley Road is a public road and that Hartwell has a right of way over the rangeway between the western edge of the Stanley Road and lot 1.

The entry shall be:

For the foregoing reasons, the court finds and adjudges that the Stanley Road is a public road between the intersection of the Turnpike Road and the point where it crosses onto lot 2 of Tract Z. Further, the court finds and adjudges that the plaintiffs have a right of way over the rangeway located between lots 3 and 4 of Tract Z, between the western edge of the Stanley Road and the western boundary of lot 1. The

12

defendants are enjoined from blocking or preventing the plaintiffs' access in, or and over those ways.

The plaintiffs are awarded their costs of court.


Dated: May 18, 2001

_____
JUSTICE, SUPERIOR COURT
Hon.   Jeffrey L. Hjelm

13

Date Filed _____10/2/98_____ PENOBSCOT Docket No. _____RE-98-52_____
County
TITLE TO REAL ESTATE INVOLVED                    *1/5/00 – John Doe #1 & John Doe #2
Action __REAL ESTATE – RIGHT OF WAY EASEMENT__              DISMISSED

          Assigned to Justice Jeffrey L. Hjelm



                                          TOWN OF MEDWAY,
     HOWARD A. HARTWELL and               CARROLL STANLEY,
     BARBARA R. HARTWELL          .       * JOHN DOE #1  AND JOHN DOE #2*
                                 vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
|  | Richard Violette, Esq. |
| CHARLES GILBERT, ESQ. | PO Box 908 |
| P O BOX 2339 – 82 Columbia Street | Brewer, Maine   04412-0908 |
| BANGOR, ME 04402-2339 | For:   Town of Medway |
|  | Tanous and Snow |
|  | P O Box 246 -· 29 Main street |
|  | East Millinocket ME 04430 |
|  | BY: G Bradley Snow, Esq / Wakine Tanous,Es |
|  | FOR: Carroll Stanley |

| Date of Entry | |
|---|---|
| 10/2/98 | Complaint – Title to real Estate Involved – filed. |
| 10/5/98 | Case File Notice and Pretrial Scheduling Statement and Jury Demand form forwarded to Plaintiff's counsel. |
| 10/15/98 | Officer's Return of Service as to Town of Medway filed (s.d. 10/5/98 by Karen Olivieri, Clerk) |
| 10/15/98 | Officer's Return of Service as to Carroll Stanley filed (s.d. 10/5/98) |
| 10/16/98 | Answer of Town of Medway filed. |
| 10/22/98 | Defendant's Affirmative Defenses and Answer to Complaint filed by Defendant Carroll Stanley. |
| 11/3/98 | Pretrial Scheduling Statement filed by Plaintiff. |
| 11/20/98 | Notification of Discovery Service Filed by Plaintiffs, Plaintiffs' First Request for Admissions Propouded to Defendants Town of Medway and Carroll Stanley. |
| 12/14/98 | Notification of Discovery Service filed by Defendant, Town of Medway's Response to Request for Admissions. |
| 12/18/98 | Notification of Discovery Service filed by Defendant Stanley, Answers to Plaintiff's First Request for Admissions. |
| 1/29/99 | Notification of Discovery Service filed by Plaintiffs, Interrogatories propounded upon Carroll Stanley. |
| 3/4/99 | Notification of Discovery Service Filed by Defendant Carroll Stanley; Defendant Carroll Stanley's Objections to Plaintiffs' Interrogatories. |