**In re ASHLEY A., et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 20, 1996.

Decided June 21, 1996.

Rebecca A. Irving, Norman P. Toffolon, Machias, for Appellants.

Andrew Ketterer, Attorney General, Diane E. Doyen, Assistant Attorney General, Augusta, for Appellees.

Michael E. Povich, District Attorney, Carletta M. Bassano, Assistant District Attorney, Machias, Guardian-ad-Litem.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

Kevin A. and Mary Jane J. (no marital relationship) appeal from a judgment entered in the District Court (Machias, *Romei, J.*) terminating their parental rights to their child, Ashley A. In addition, Mary Jane appeals from that portion of the judgment terminating her parental rights as to Ashley's half-siblings, Joseph and Jocelyn J. Both parents challenge the sufficiency of the evidence.[1] We affirm the judgment.

The facts presented at trial may be summarized as follows: Ashley, born in 1988, is the child of Mary Jane and Kevin. Jocelyn, born in 1987, and Joseph, born in 1985, are the children of Mary Jane and George L.[2] In March 1992, the Washington County Probate Court (*Holmes, J.*) issued a preliminary child protection order, placing all three children in the custody of the Department of Human Services (the Department).[3] The order was issued in response to an affidavit stating that the children were in jeopardy based on Mary Jane's "failure to provide adequate supervision, emotional support, and [a] substance-free stable home environment."[4] At the time of the order, Mary Jane was incarcerated on assault charges, and had left the children in the care of a 15–year–old girl; the babysitter and her boyfriend reportedly drank beer, smoked pot, played loud music, and had engaged in sexual acts in the presence of the children. Kevin was incarcerated at Charleston Correctional Center.

In July 1992, the District Court (Ellsworth, *Russell, J.*) issued a final child protection order with regard to all three children. The court found that they were in jeopardy "stem[ming] from the untreated poly-substance abuse of Mary Jane J., which affects her ability to safely parent her children." Custody was continued with the Department, and Mary Jane was ordered to undergo substance abuse treatment and appropriate counseling. The Child Protection Order remained in force for over two years; judicial review of the order was held periodically during that time. The court ordered Mary Jane to continue to seek substance abuse treatment and appropriate counseling. Kevin was ordered to submit to a psychological evaluation and any substance abuse counseling recommended by the Department.

Initially, Mary Jane cooperated fully with the Department's reunification plans. Reunification was progressing well until the spring of 1993: in late May, she went on a drug and alcohol binge. She was admitted to the Machias Downeast Community Hospital for detoxification. She was then transferred to the Hope House in Bangor, and then into the Wellspring Program. In August 1993, Mary Jane left the Wellspring Program prematurely, against therapeutic advice. Two weeks after she notified the Department of her early withdrawal from Wellspring, the

---

1. Kevin also argues that the court erred in admitting statements made by Joseph and Jocelyn to therapists concerning his behavior toward them. The court specifically stated it would not consider the statements with respect to Kevin's parental rights vis-a-vis Ashley. We review the evidence on the same basis.

2. George L. has never appeared in any proceeding regarding these children and has not appealed the termination of his parental rights.

3. Ashley and Jocelyn have been in the foster care of Joan L. since they were removed from Mary Jane's home. Joan L. is Kevin's mother, and Ashley's grandmother. Mrs. L. does not intend to adopt the girls.

4. At the time of the order, Mary Jane was the sole custodial parent for all three children.

Department notified her that they were ceasing reunification efforts. This decision was based on the best interests of the children and her lack of progress in treatment. The Department continued to schedule visitation for her. In September 1993, Mary Jane met with her alcohol-abuse counselor, who outlined a treatment plan for her. She informed him she did not think she was able to comply with the treatment plan. After that meeting, she did not contact her substance abuse counselor.

After Kevin was released from incarceration in December 1992, he moved back in with Mary Jane. The couple presented themselves to the Department as willing to pursue reunification as a family. Kevin indicated he was willing to cooperate with the Department regarding a psychological evaluation. The evaluation was never implemented: there is no evidence that Kevin or the Department actively pursued it, and there is no evidence that either side prevented it. In mid-January 1993, Mary Jane told the Department that Kevin had moved out and that she would pursue reunification efforts on her own.

Kevin maintained a continuing relationship with Ashley, visiting her two or three times per week, at his mother's home without the Department's consent or supervision. In late January 1993, Kevin contacted a caseworker and stated he was "not interested in reunification", because he felt· it was not going to work out. He stated his intention to continue visiting his daughter. In May 1993, Kevin's attorney wrote a letter to the Department indicating a willingness to cooperate with the Department on visitation with Ashley. No further action was taken by Kevin or his attorney; neither was there any response by the Department.

In September 1993, the Department informed Kevin that it was formally ceasing reunification efforts. In February 1994 Kevin came to the Department, expressing concern about Ashley. A Department caseworker testified that Kevin

> acknowledged he did not feel that he could be a resource for her in taking care of her,

that he did not feel comfortable with Ashley residing with Mary Jane and [her new husband],[5] and he had indicated that he was willing to consent to a termination of parental rights, in the hopes that Ashley could be provided with a safe, loving home with parental caretakers.

On December 15, 1993, the Department petitioned for a termination of all parental rights as to all three children. The hearing on this petition was held and the District Court issued its final judgment terminating both Mary Jane's and Kevin's parental rights. The court found, by "clear and convincing evidence", that "Mary Jane ... is unwilling or unable to protect the children from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet [their needs]." The court specifically found that this jeopardy "stems from the untreated polysubstance abuse of Mary Jane ... which compromises her ability to safely parent her children." As to Kevin, the court found that he has a history of violence and alcoholism, that he is "unwilling or unable to protect [Ashley] from jeopardy and [that] these circumstances are unlikely to change within a time which is reasonably calculated to meet [her] needs." The court also found that Kevin "has been unwilling or unable to take responsibility for Ashley ... within a time which is reasonably calculated to meet her needs," specifically finding that Kevin "has never shown the ability or desire to take responsibility for his daughter Ashley," that he "admitted to a caseworker that he was not capable of caring for Ashley and was not seeking reunification," and that although "he has been visiting Ashley during her current foster placement with his mother, he has never taken responsibility for Ashley or undertaken significant steps to show he is capable of caring for and protecting her from jeopardy." The court also found that "Kevin ... has failed to make a good faith effort to rehabilitate and reunify with Ashley", noting that "[i]n February 1993 [Kevin] declined [the] reunification services [available to him under the first judicial review order]", and that "[Kevin also] failed to take advantage of [the] opportunity [to coop-

---

5. At this point, Mary Jane had married Kevin's father.

erate with the Department under the terms of the second judicial review order]." The court also found that termination of parental rights of both parents was in the best interest of the three children. From this judgment, both Mary Jane and Kevin appeal.

■ Parental rights may be terminated if:

The court finds, based on clear and convincing evidence, that:

(a) Termination is in the best interest of the child; and

(b) Either:

(i) The parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs;

(ii) The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;

(iii) The child has been abandoned; or

(iv) The parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.[6]

22 M.R.S.A. § 4055(1)(B)(2) (1995). Notwithstanding the sequence in the statute, the trial court must first find, by clear and convincing evidence, one of the four bases of parental unfitness, section 4055(1)(B)(2)(b), before it may consider the best interests of the child, section (1)(B)(2)(a). *In re Leona T.*, 609 A.2d 1157, 1158 (Me.1992). "Best interests of the child" may be determined by considering such factors as the needs of the child, the child's age, attachment to relevant persons, periods of attachment and separation, ability to integrate into substitute placement or back into parent's home, and the child's physical and emotional needs. Although a finding of parental unfitness and a finding of best interests of the child are two separate elements, the court may consider the findings of parental unfitness as relevant to best interests. For example, the parent's inability to protect the child from jeopardy is relevant to the child's best interests. *In re Jason B.*, 552 A.2d 9, 11 (Me.1988).

■ A challenge to the sufficiency of the evidence requires us to review the record to determine whether the court could reasonably have been persuaded that the required factual findings were proved to be highly probable. *In re Serena C.*, 650 A.2d 1343, 1344 (Me.1994).

■ The evidence presented at trial supports the finding that Mary Jane exposed her children to an unstable, violent home environment. The children have witnessed violent episodes between Mary Jane and several of her boyfriends, including Kevin. This home environment is a direct result of Mary Jane's substance abuse problems. Mary Jane has also failed to adequately supervise her children: both Joseph and Jocelyn were sexually abused in the home by a neighbor and by an uncle. The abuse occurred when Mary Jane was either physically absent or present but intoxicated. If the children were returned to her, they would continue to be in jeopardy of serious physical and emotional harm. Because Mary Jane has been unable or unwilling to address her substance abuse problems, the situation is unlikely to change within a time reasonably calculated to meet the children's needs. Accordingly, the trial court did not err in finding by clear and

6. 22 M.R.S.A. § 4041 imposes an affirmative duty upon the parent to seek out reunification through the Department:

B. Parents are responsible for rectifying and resolving problems which prevent the return of the child to the home and shall take part in a reasonable rehabilitation and reunification plan and shall:
(1) Maintain meaningful contact with the child pursuant to the reunification plan....

(2) Seek and utilize appropriate services to assist in rehabilitating and reunifying with the child;
....
(4) Maintain contact with the department, including prompt written notification to the department of any change of address; and
(5) Make good faith efforts to cooperate with the department in developing and pursuing the plan;
....

22 M.R.S.A. § 4041 (1995).

convincing evidence that termination of Mary Jane's parental rights was justified.

 The evidence presented at the hearing also supports the finding that Kevin has a history of violence, alcoholism, and irresponsibility. Kevin failed to demonstrate that these problems have been rectified. The court was warranted in concluding that he is unable to protect Ashley from jeopardy and unable to take responsibility for Ashley, and that the situation is unlikely to change within a time reasonably calculated to meet Ashley's needs. Finally, there is uncontradicted evidence that Kevin refused to cooperate with the Department in pursuing reunification. The fact that he continued to maintain a relationship with his daughter by visiting her regularly, on his own initiative does not suffice: 22 M.R.S.A. Section 4041 (1995) imposes an affirmative duty on a parent to faithfully pursue reunification *through the Department.* In the first instance it is the Department that must assess whether the child may be returned to the parent. By refusing to cooperate with the Department, Kevin made such an assessment impossible. For all of these reasons, the court did not err in finding that termination of Kevin's parental rights was justified.

The entry is:

Judgment affirmed.

All concurring.