1997 ME 15

**ESTATE OF Zoa J. SPEAR.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 11, 1996.

Decided Jan. 28, 1997.

John J. Sanford, Harmon, Sanford & Jones, Camden, for appellant.

Stephen W. Hancom, Crandall, Hanscom, Pease and Collins, P.A., Rockland, for appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Marilyn S. Patenaude, one of five surviving beneficiaries of the trust created by the will of her grandmother, Zoa J. Spear, appeals from the judgment of the Knox County Probate Court (*Emery, J.*) approving the transfer of certain trust properties to the trustee in his individual capacity. Patenaude contends that the Probate Court erred as a matter of law in approving the transfer. We agree and vacate the judgment.

*Background*

[¶ 2] In July 1970 Zoa J. Spear created a trust for the benefit of her two children. Pursuant to the terms of the trust, Zoa Spear's grandchildren would share in the assets of the trust at the death of the survivor of Zoa Spear's two children. Ruth Spear Rich, Zoa Spear's daughter, died in 1984. Erwin M. Spear, Zoa Spear's son, died on February 6, 1993. Prior to his death, however, Erwin and his son, Everett Spear, II, who were both surviving trustees of the trust, wrote to the five beneficiaries of the trust, including Everett himself, proposing the purchase by Everett of three parcels of real estate from the trust corpus.[1] Along with the letter, the trustees enclosed a description of each of the three properties to be purchased, as well as a list of "required improvements" and the purchase price for each property.

[¶ 3] All five of the trust beneficiaries, including Everett, signed and returned to the

---

1. Written in June of 1992, the letter reads in pertinent part:

The enclosed proposal creates a conflict of interest for us as trustees. Therefore, it is necessary to place this matter before the Judge of Probate, by way of petition, and seek permission for the trustees to sell the real estate. A previously approved proposal by the beneficiaries will facilitate a timely and cost effective resolve [*sic*] to this matter.

trustees a reply letter that had been included with the proposal. The letter contained a provision that "[t]he undersigned approve of the sale as set forth in the proposal to liquidate, dated June 26, 1992, and request the Probate Court approve the sale as set forth in the proposal." On January 6, 1993, trustees Everett Spear, II, and Erwin Spear, Sr., executed a short form Deed of Trustee granting the three parcels to Everett Spear, II, for the proposed purchase price of $105,000, without obtaining the authorization of the Probate Court for the transfer. On February 6, 1993, the survivor of the two original trust beneficiaries, Erwin W. Spear, died. Under the terms of Zoa Spear's will, the trust terminated and the remaining trust assets were to be distributed equally among the five Zoa Spear grandchildren.

[¶ 4] On April 12, 1994, approximately 15 months after Everett Spear, II, purchased the three parcels in question from the trust, he petitioned the Probate Court to "ratify and approve" the purchase pursuant to 18–A M.R.S.A. § 7–404(b).[2] Of the five beneficiaries, only Marilyn Patenaude filed an answer to the trustee's petition. In her answer, she asked the court to "[d]etermine the fair market value of the properties transferred from the Zoa Spear Trust to the Petitioner" and to "[a]uthorize the sale of such properties to the Petitioner on such terms and conditions as the Court deems just." Patenaude also requested that the court order "the Petitioner to present a full and complete accounting of its trust."

[¶ 5] After a hearing on the petition for court authorization, the court approved the sale of the three parcels to trustee Everett Spear, II, for $105,000. The court found that the trustee had paid a fair price for the three parcels he purchased from the trust corpus and that he had met his duty to disclose all relevant information pertaining to the sale.

The court further found that Patenaude was estopped from challenging the transaction, having voluntarily consented to the sale with full knowledge of material facts and without any coercion or misrepresentation on the part of the trustee. Patenaude contended that she relied on the trustee's statement that the court would review the transaction before any sale took place.[3] The court concluded that 18–A M.R.S.A. § 7–404(b) does not require a trustee to seek judicial approval of the transaction prior to sale. Patenaude now appeals from the court's judgment approving the sales.

### Discussion

[¶ 6] Statutory interpretation is a matter of law. We review the court's decision on a matter of law de novo. *Guardianship of Zachary Z.*, 677 A.2d 550, 552 (Me. 1996) (citations omitted). Although the court observed that "the trustees should have followed the prudent path outlined in 18–A M.R.S.A. § 7–404(b) and sought Court approval prior to executing the deed from the trustees to the trustee/buyer," the court concluded that 18–A M.R.S.A. § 7–404(b) does not require a trustee to seek judicial approval before transferring trust property to himself. The Court approved the trustee's postsale petition because "all of the beneficiaries approved the transaction without any inducement by the trustees and had full knowledge of all of the pertinent facts regarding the transaction."

[¶ 7] "The fundamental rule in statutory construction is that words must be given their plain ordinary meaning." *Mullen v. Liberty Mutual Insurance Co.*, 589 A.2d 1275, 1277 (Me.1991). In interpreting a statute, we read the plain meaning of the statutory language in order to give effect to the intent of the legislature. *Guardianship of*

---

2. 18–A M.R.S.A. § 7–404(b) reads as follows:
   If the duty of the trustee and his individual interest or his interest as trustee of another trust, conflict in the exercise of a trust power, the power may be exercised only by court authorization, except as provided in section 7–402, subsection (c), paragraphs (1), (4), (6), (18) and (24), upon petition of the trustee. Under this section, personal profit or advantage to an affiliated or subsidiary company or association is personal profit to any corporate trustee.
   The provisions of § 7–402(c) are not at issue in this matter.

3. In 1987, trustee Everett Spear, II, proposed a similar sale of trust properties to himself. In that circumstance, the Probate Court reviewed the terms of the sale before it took place.

*Zachary Z.,* 677 A.2d 550, 552 (Me.1996). "... [W]hen the meaning of the statute is clear, there is no need to look beyond the words, unless the result is illogical or absurd." *Central Maine Medical Center v. Maine Health Care Finance Comm'n,* 644 A.2d 1383, 1386 (Me.1994).

[¶ 8] Title 18–A M.R.S.A. § 7–404(b) governs transactions of a trustee when the trustee's individual interest and duty to the trust are in conflict. In such a case, the trustee may act "only by court authorization." To "authorize" is "to empower; to give a right or authority to act. To endow with authority or effective legal power, warrant or right. To permit a thing to be done in the future." Black's Law Dictionary 133 (6th ed. 1990.) "Although the effect of a ratified act is essentially the same as an act that was authorized, the distinguishing element is that ratification takes place after the act has occurred while authorization must occur before conduct arises." *Manning v. Twin Falls Clinic & Hospital, Inc.,* 122 Idaho 47, 830 P.2d 1185, 1192 (1992). By reading section 7–404(b) as permitting approval of the sale of trust property to the trustee in his individual capacity after the transaction has already taken place, the court misperceived the plain meaning of the statute. 18–A M.R.S.A. § 7–404(b) requires court approval before the transaction takes place, thereby assuring adherence to "the general duty of the trustee to administer a trust expeditiously for the benefit of the beneficiaries." 18–A M.R.S.A. § 7–301 (1981). *See Nasberg v. City of Augusta,* 662 A.2d 227, 229 (Me.1995) (in interpreting a statute we will consider "the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved").[4]

[¶ 9] As this case demonstrates, the requirement of prior approval provides safeguards that a process of subsequent ratification does not, particularly when fifteen months pass before the ratification is sought. Improvements may be made to the transferred properties by the new owner, as occurred here, because of an assumption that the court will ratify what has already been done.[5] The court may be disinclined to undo the new status quo that exists after the sales and will place an evidentiary burden on the beneficiary challenging the sales to justify such an undoing. That is precisely what happened here. Instead of requiring the trustee to persuade the court that the proposed transaction, despite the conflict of interest, was fair to the beneficiaries of the trust, the court improperly placed the burden on Patenaude, a trust beneficiary, to convince the court that the bargain struck by the trustee with himself was not fair and reasonable and hence should be undone.[6] That burden of persuasion on the fairness and reasonableness of the transaction should rest with the trustee who has presented the conflict issue to the court. The requirement of prior approval assures the proper allocation of this burden.

[¶ 10] Since the trustee of the Zoa Spear Trust failed to seek court authorization pursuant to 18–A M.R.S.A. § 7–404(b) prior to conveying the trust properties to himself, the judgment approving that conveyance must be vacated and the court should enter a new order providing for a reconveyance of the properties to the trust, or if the trust has

---

4. Although Patenaude did not explicitly articulate the position that 18–A M.R.S.A. § 7–404(b) required prior approval of the sale, she did argue that the trustee had the burden to prove, and the court had to find, that the transaction was fair to the beneficiaries before the sale could be approved. That argument on the proper allocation of the burden of proof is so linked to the requirement of prior approval of the transaction by the court that we deem the statutory issue to have been raised properly by the appellant.

5. Everett Spear, II, testified that he had spent approximately $44,300 in improving the three properties purchased from the trust.

6. In denying Patenaude's petition, the court also held that she was estopped from challenging the transaction to which she consented because she "was of sound mind and had full knowledge of the facts ...; she offered no objection or attempted further review of the supporting material sent to her prior to her signature; and because she raised her objections so long after having given her approval." These findings further reflect the court's misallocation of the burden of proof. Estoppel would never have been an issue if the trustees had sought prior approval of the sale.

terminated, to a constructive trust to be supervised by the Probate Court. Those properties, or the proceeds from the sale thereof, must be distributed in a manner that is fair to the beneficiaries of the trust under current market conditions. Such distribution should also give just consideration to the $105,000 purchase price paid by the trustee, the improvements to the properties made by the trustee, the income earned by the trustee since the conveyance of the properties, and any other equitable adjustments.

The entry is:

Judgment vacated. Remanded for the entry of a judgment ordering a reconveyance to the trust or a court-supervised constructive trust of the trust properties conveyed on January 6, 1993, to Everett Spear, II, and for further proceedings consistent with the opinion herein.

WATHEN, Chief Justice, with whom GLASSMAN and RUDMAN, Justices, join, dissenting.

[¶ 11]   I respectfully dissent. The Court's opinion is based on the conclusion that 18–A M.R.S.A. § 7–404(b) requires a trustee to obtain judicial approval of any transaction involving a conflict of interest before entering into that transaction. This statutory argument was never presented to the Probate Court nor was it set forth in the briefs filed on appeal. I am unpersuaded by the Court's rationale for deciding this case on the basis of an issue that was never presented. I would affirm the judgment.

[¶ 12]   Principles of sound appellate practice generally restrain us from going beyond the issues raised by the parties, particularly in civil litigation. Legal issues not presented to the trial court and raised for the first time on appeal are generally held to have been waived. One obvious purpose of this rule is to ensure that the trial court has a full opportunity to dispose finally of the case and to make all of the factual findings needed for effective appellate review. *Harrington v. Inhabitants of the Town of Garland,* 381 A.2d 639, 643 (Me.1978). The need to crystalize the legal issues involved in a case through briefing and argument at the trial level has also been considered an important reason for this principle. *See Wellstone Partners v. J & M Const. Co.,* 581 A.2d 789, 791 (Me.1990) (parties must raise issues before the trial court to give the court an opportunity to consider its legal rulings in light of unnoticed legal authority).

[¶ 13]   Even more compelling is the principle that issues not argued in the briefs submitted to this Court should be treated as waived. As we stated in *Aseptic Packaging Council v. State,* 637 A.2d 457 (Me.1994):

> We do not generally reach out, without the benefit of either written or oral argument by counsel, to decide legal contentions nowhere raised by the [parties]. Nevertheless, in order to avoid depriving [the parties] of [their] constitutional right to a fundamentally fair trial, and for the purpose of maintaining the basic integrity of the judicial process, we will notice "error, if error there be, that works substantial injustice, whether or not it is brought to the attention of the trial or appellate court."

*Id.* at 463 n. 4 (quoting *State v. Brunette,* 501 A.2d 419, 422–23 (Me.1985) (citations omitted)); *see also Cloutier, Barrett, Et Al. v. Wax,* 604 A.2d 42, 45 (Me.1992) (applying obvious error doctrine in civil context); *Wellstone,* 581 A.2d at 792 (same). The Probate Court's interpretation of 18–A M.R.S.A. § 7–404(b), if erroneous, was not challenged by the parties and has not worked a "substantial injustice." Thus, we should not vacate the judgment on the basis of such unpreserved error.

