1998 ME 132

## In re MELANIE S., et al.

Supreme Judicial Court of Maine.

Argued Dec. 3, 1997.
Decided June 3, 1998.

Andrew Ketterer, Attorney General, Janice S. Stuver (orally), Nora Sosnoff, Asst. Attys. Gen., Augusta, for appellant.

Peter J. Kaynor (orally), Joyce, Dumas, David and Hanstein, P.A., Mexico, for mother.

Michael T. Steven (orally), Bethel, Guardian ad Litem.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

LIPEZ, Justice.

[¶ 1] The Department of Human Services appeals from the judgment of the District Court (Rumford, *Sheldon J.*) terminating the parental rights of the mother with respect to her children, Melanie S. and Joseph S. The Department contends that the District Court exceeded its statutory authority by including in its judgment the requirements that the Department provide for visitation between the mother and her children until the children are adopted and seek an "open" adoption for each child with respect to the mother. We agree with these contentions and vacate the termination order in part.

I.

[¶ 2] In October of 1996, the Department petitioned the District Court to terminate the mother's parental rights to Melanie and to Joseph. At the termination hearing, the court heard evidence that, *inter alia,* the

mother's psychiatric history reveals a pattern of depression and suicidal ideation; she experiences command hallucinations telling her to hurt herself; she consistently reports to her home health nurse that she feels suicidal; and she loves Melanie and Joseph, visited the children whenever she was given the opportunity, and attempted to cooperate with the Department.

[¶ 3] Although the court found that the Department had "overwhelmingly" satisfied its burden of proof, it terminated the mother's parental rights subject to the condition that she "be permitted continuing participation in the children's lives to the extent that such participation does not diminish the children's best interests." The court required the Department to seek "open" adoptions of Melanie and Joseph as to the mother only[1] and to provide for regular visitation between the mother and the children until they are adopted. The court stated that "DHS will be relieved of the obligation to seek an open adoption for either child as to their mother if it is demonstrably true in that child's case that continued contact between child and mother after adoption would be contrary to that child's best interest." The court reasoned:

> [The mother] is a person who so desperately needs her children that she has contemplated suicide if she loses them. Most people can live with the loss of a child, albeit grimly difficult to do so. [The mother], I fear, can't: her psyche is so fragile that she might not survive the termination of her parental rights. Given the fact that she so desperately loves her children and needs them to bind her ragged self together, and that there is a substantial risk of her death if she loses them, I feel that this is a case in which I *have* to try to minimize her pain.

From this order, the Department appeals.

## II.

[¶ 4] The District Court's authority to terminate parental rights is defined by 22 M.R.S.A. §§ 4050–4058 (1992 & Supp.1997).

Statutory interpretation is a question of law that we review de novo. *See Estate of Spear,* 1997 ME 15, ¶ 6, 689 A.2d 590, 591. We accord the words of a statute "their plain ordinary meaning," and if that meaning is clear, we do not "look beyond the words, unless the result is illogical or absurd." *Id.* at ¶ 7, 689 A.2d at 591–92 (quotations and citations omitted).

■ [¶ 5] Section 4055 of Title 22 permits a court to terminate parental rights if the court finds, by clear and convincing evidence, both that termination will serve the best interest of the child and that:

(i) [t]he parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs;

(ii) [t]he parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;

(iii) [t]he child has been abandoned; or

(iv) [t]he parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.

22 M.R.S.A. § 4055(I)(B) (1992). "Notwithstanding the sequence in the statute, the trial court must find, by clear and convincing evidence, one of the four bases of parental unfitness ... before it may consider the best interests of the child...." *In re Ashley A.,* 679 A.2d 86, 89 (Me.1996).

■ [¶ 6] Pursuant to section 4056(1), "[a]n order terminating parental rights divests the parent and child of all legal rights, powers, privileges, immunities, duties and obligations to each other as parent and child, except the inheritance rights between the child and his parent." 22 M.R.S.A. § 4056(1) (1992). The plain language of this section mandates that a termination order sever the relationship between parent and child. The court's attempt to terminate the mother's rights to her children and concomitantly to preserve her relationship with them by re-

---

1. The court terminated the parental rights of Melanie and Joseph's father in January of 1996. The Department was not ordered to seek open adoptions of the children with respect to the father.

quiring the Department to provide for continuing visitation was beyond its authority.[2]

■■■ [¶ 7] The mother contends that because the court must conduct periodic reviews of a child protective order while a child remains in the Department's custody, *see* 22 M.R.S.A. § 4038(7) (1992 & Supp.1997), and because the court may alter a protective order to include "[o]ther specific conditions governing custody," *see* 22 M.R.S.A. § 4036(1)(H) (1992 & Supp.1997), the court retains the authority to require visitation between parent and child after it terminates the parent's rights as long as the child remains in the Department's custody. We disagree. Although the Department is always obligated "to enhance the welfare" of the children in its custody, *see* 22 M.R.S.A. § 4004(2) (Supp.1997), and the court does retain jurisdiction over a child for as long as he or she remains in the Department's custody, an order terminating parental rights deprives the court of any authority to impose a condition that preserves contact between the parent and the child.[3]

### III.

■■■ [¶ 8] Pursuant to "The Adoption Act," 18–A M.R.S.A. §§ 9–101–9–404 (1998), "[t]he Probate Court has exclusive jurisdiction over ... [p]etitions for adoption...." 18–A M.R.S.A. § 9–103(a)(1). The District

Court's order, insofar as it requires the Department to pursue "open" adoptions of the children, impermissibly infringes on the jurisdiction of the Probate Court. Moreover, pursuant to 22 M.R.S.A. § 4056(3) (1992), "[a] parent whose rights have been terminated shall not be entitled to notice of the child's adoption proceedings, nor shall he have any right to object to the adoption or participate in the proceedings."[4] The District Court's "open" adoption requirement violated this statutory provision[5] by making a parent whose rights have been terminated a participant in the adoption proceedings.

The entry is:

Those conditions in the judgment relating to the continuing visitation of the mother with Melanie S. and Joseph S. and the obligation of the Department of Human Services to pursue "open" adoptions are hereby deleted and, as so modified, the judgment is affirmed.

■■■■■■■■■■■■■■

2. In its order, the District Court acknowledged that the requirement "that [the mother] be permitted continuing participation in the children's lives to the extent that such participation does not diminish the children's best interests ... exceed[ed] the express prescriptions of the statute."

3. By contrast, the Legislature has provided a procedure whereby grandparents may obtain visitation rights for the period subsequent to a termination of parental rights and prior to adoption. Pursuant to section 4005–B of Title 22, a grandparent may petition to intervene in a parental termination proceeding and may "request the court to grant the grandparent reasonable rights of visitation or access." 22 M.R.S.A. § 4005–B(2),(6) (Supp.1997).

4. We observe that the Legislature, having determined that post-termination visitation by grandparents may be appropriate in some cases, nevertheless drew a bright line at adoption, mandating that grandparents' visitation rights terminate once a child's adoption is finalized. *See* 22

M.R.S.A. § 4005–B(6) (Supp.1997) ("A grandparent's rights of visitation or access terminate when the adoption is finalized pursuant to Title 18–A, section 9–308."). Notably, the Legislature defined "grandparent" to include "the parent of a child's parents whose parental rights have been terminated, *but only until the child is placed for adoption*." 22 M.R.S.A. § 4005–B(1) (Supp. 1997) (emphasis added).

5. We examined this provision in *In re Justin S.,* 595 A.2d 1058, 1060 (Me.1991), in which we affirmed a finding that termination served the child's best interest despite testimony that he would benefit from continuing visitation with his mother. We noted the court's lack of "flexibility to order an adoption that preserved the natural parent's visiting privileges" and concluded that "[g]iven only the alternative of more temporary foster care," the court's finding that termination served the child's best interest was not clearly erroneous. *Id.* at 1060–61.