2001 ME 123

**In re MICHELLE W.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 25, 2001.
Decided: July 25, 2001.

E. Chris L'Hommedieu, Esq., Robert L. Abbott Jr., Esq., L'Hommedieu Law Office, Lewiston, for appellant.

G. Steven Rowe, Attorney General, Matthew Pollack, Asst. Attorney General, Nancy Henry, Asst. Attorney General, David Hathaway, Asst. Attorney General, Augusta, for appellee.

Lillian Kennedy, Esq., Auburn, Guardian ad Litem.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] The mother of Michelle W. appeals from the judgment of the District Court

(Lewiston, *Beliveau, J.*) terminating her parental rights.[1] The mother argues that the court erroneously considered the best interest of the child to be the controlling factor in the termination decision. She contends that a bifurcated termination hearing is required so that the trial court will not reach the issue of the best interest of the child until parental unfitness has been determined. Because we agree that the court erred and that the error is not harmless, we vacate the judgment.

## I. PROCEEDINGS AND FINDINGS

[¶ 2] Upon the filing of a child protection petition by the Department of Human Services, the District Court (*Mullen, J.*) issued a preliminary protection order on November 5, 1999, granting custody of Michelle to the Department. Before the mother was notified of the petition and order, she left the area with Michelle. In early December 1999, the Department located the mother and Michelle in Florida. The Department took Michelle into custody and served the petition and order on the mother. Three months later, the mother consented to the issuance of a final jeopardy order. The District Court (*Gorman, J.*) ordered services aimed at reunifying the mother and Michelle. The Department filed the petition for termination of parental rights within two months of the jeopardy order, and the termination hearing was held in September 2000. At the time of the termination proceeding, Michelle was six years old.

[¶ 3] In its detailed findings of fact following the termination hearing, the trial court found that the Department had provided counseling for the mother and made home visits prior to filing the child protection petition. The reason for the Depart-

ment's intervention was the mother's disclosure in August 1999 that she struck Michelle and left a bruise on her back. The mother also admitted that she put her arm through a window and cut it in Michelle's presence. Also in August 1999, the police found Michelle wandering in a park by herself early in the morning. The court further found that the mother and her boyfriend had been arrested for assault, stemming from an incident of domestic violence, and were later arrested for violating bail conditions. The court noted that the basis of the consent jeopardy order was the mother's mental condition, her involvement with domestic violence, and her inability to care for Michelle because of Michelle's special needs.

[¶ 4] The court found that the mother had previously received mental health services, but she had not participated in these services "efficiently." The court found that she has a history of forming relationships with violent men. In 1994, several years before the child protection proceedings, the mother had participated in criminal activities with a male partner. The court also found that the mother had experimented with illegal drugs and had abused alcohol when she was first pregnant with Michelle. The mother was abused by Michelle's father, and after Michelle was born, the mother had relationships with two other abusive men.

[¶ 5] Michelle's mother participated in an extensive psychological evaluation after the child protection petition was filed. The evaluation team's findings and recommendations, which the trial court found reliable, were that because of her mental condition and Michelle's special needs, the mother was not able to care for Michelle.

---

1. Michelle's father consented to the termination of his parental rights and has not ap-   peared in this appeal.

The team diagnosed the mother as having a narcissistic personality and post-traumatic stress disorder. The evaluation team found that the mother was more concerned about her own feelings of loss of Michelle, than she was about Michelle's feelings. The team further found that the mother lacks empathy and has little insight. The team was also concerned about substance abuse. The court found that the mother was arrested in March 2000 for operating under the influence of intoxicating beverages.

[¶ 6] The same evaluation team also evaluated Michelle. It noted that she was developmentally delayed when first placed in the foster home, and she was assaultive toward other children. At the time of Michelle's evaluation in February 2000, she had been in the foster home for three months, and she showed significant improvement. The team recommended various services for Michelle and that she be placed in a permanent therapeutic home with support services. The trial court emphasized that it gave great weight to the team's recommendations. The court noted that Michelle remained in the original foster home until August 2000, when she was placed in a pre-adoptive home.

[¶ 7] At the close of the termination hearing the court said: "This is not an easy case. It's not going to be an easy case to decide, particularly with the clear and convincing standard."

[¶ 8] In its written decision, the court stated: "The best interest factor takes precedence over the fault factors under existing law."[2] The court found that Michelle was now in a stable environment and has bonded with her foster parents who intend to adopt her. It stated that although Michelle knows her mother, "because of the mother's condition it is detri-mental to Michelle if she continues to have contact with her mother."

[¶ 9] The court went on to find that the mother is willing but unable to protect Michelle from jeopardy because of her mental condition, and that she is unable to take responsibility for Michelle within a time reasonably calculated to meet Michelle's needs. It also found that the mother failed to make a good faith effort to rehabilitate in that she had been tardy in her therapy appointments and had not sufficiently progressed in therapy. The court concluded by stating:

> Considering and weighing the mother's existing mental condition against the special needs of this child, the weight of the evidence as to best interest tilts substantially towards and in favor of Michelle and her best interests to be cared for in a stable and nurturing environment which the mother cannot provide now or in the near future.

## II. BEST INTEREST FACTOR

[¶ 10] The mother argues that the court erred in placing a priority on the best interest factor over and above the parental fitness factors. The Department argues that the court did not err because the court articulated its finding of parental unfitness in addition to its finding that termination is in Michelle's best interest.

[¶ 11] We recently reiterated the constitutional requirement that an involuntary termination of parental rights may only be ordered when there is a showing by the Department that the parent is unfit or has harmed the child. *In re Scott S.*, 2001 ME 114, ¶¶ 19–21, 775 A.2d 1144. To ensure that an involuntary termination will not occur without the finding of unfitness,

---

2. This is the identical language the same court used in *In re Scott S.*, 2001 ME 114, ¶ 19, 775 A.2d 1144, and *In re Joshua B.*, 2001 ME 115, ¶ 6, 776 A.2d 1240.

we have repeatedly instructed the trial courts not to reach the best interest prong until the State has made a showing of unfitness. *In re Melanie S.*, 1998 ME 132, ¶ 5, 712 A.2d 1036, 1037; *In re Ashley A.*, 679 A.2d 86, 89 (Me.1996); *In re Leona T.*, 609 A.2d 1157, 1158 (1992); *In re Shannon R.*, 461 A.2d 707, 712 (Me.1983). In this case the court not only reached the best interest prong before considering the parental fitness factors, but it held that the best interest factor takes precedence over the fitness factors. In so doing, the trial court committed error.

## III.  HARMLESS ERROR

[¶ 12] Because the court erred in giving precedence to the best interest prong, we must determine whether that error is harmless. The harmless error standard in termination of parental rights cases is as follows:

> [T]he State has the burden of persuading us that it is highly probable that the error did not prejudice the parents or contribute to the result in the case. The State's burden of persuasion is high. Any doubt will be resolved in favor of the parent.

> Thus, when an error has occurred in a termination of parental rights proceeding, and the party alleging the error has preserved his or her objection to the error, we review the entire record to determine whether the error prejudiced the parents in the presentation of their case or had the potential to affect the outcome of the case. In the absence of substantial certainty, that is, a determination that it is highly probable, that the error had no prejudicial effect and did not affect the outcome, we will vacate the judgment.

*In re Scott S.*, 2001 ME 114, ¶¶ 29–30, 775 A.2d at 1153.

[¶ 13] The Department argues that the court's error, which it describes as "technical," was harmless because the court's extensive findings regarding the mother demonstrate that her substantial rights were not affected. The court's error did not prejudice the presentation of the mother's case. It is not highly probable, however, that the error did not affect the outcome of the case. As we said in the above-quoted language, the Department's burden of persuasion that the error is harmless is a high one. If we cannot conclude that it is highly probable that the error was not prejudicial and did not affect the outcome, we must resolve the case in favor of the parent. This is not a case in which the evidence of unfitness is overwhelming. The trial court itself noted that the case was not an easy case to decide, given that the standard of proof is clear and convincing evidence. Because of the trial court's view that it is a close case, we do not have a substantial certainty that the mistaken priority given by the trial court to the best interest factor did not affect the outcome of this case. The error was not harmless.

[¶ 14] We do not agree with the mother, however, that a bifurcated hearing is required to correct the error of the trial court. We recognize that bifurcated hearings in parental termination cases would result in duplication of evidence. For example, evidence concerning a child's special needs can be relevant to both the inability of a parent to care for the child as well as the best interest of a child. We have said that a court may consider evidence of parental unfitness as relevant to the best interest of the child. *In re Ashley*, 679 A.2d at 89. Some witnesses will have admissible information about both unfitness and best interests. Given this duplication and the scarce resources of the courts, the Department, and defense coun-

sel, a requirement of bifurcation is not necessary.

[¶ 15] Furthermore, an examination of the statutory scheme for termination of parental rights upon petition by the Department indicates that as a matter of policy the Legislature intended that a single hearing would suffice to determine both parental unfitness and the best interest of the child. *See* 22 M.R.S.A. §§ 4050–4056 (1992 & Supp.2000). The pertinent statute reads: "The court shall hold a hearing prior to making a termination order." *Id.* § 4054 (1992). The use of the singular "hearing" in this statute signifies that only one hearing is intended.

The entry is:

Judgment vacated. Case remanded to the District Court for further proceedings consistent with this opinion.

ALEXANDER, J., with whom CLIFFORD, J., joins, dissenting.

[¶ 16] I concur with the Court that the trial court erred in interpreting 22 M.R.S.A. § 4055 to require that: "The best interest factor takes precedence over the fault factors . . . ." We recently addressed this exact issue in two cases: *In re Joshua B.*, 2001 ME 115, ¶ 8, 776 A.2d 1240, and *In re Scott S.*, 2001 ME 114, ¶¶ 17–22, 775 A.2d 1144. However, I do not agree that the trial court's misallocation of the order of factfinding requires that the termination decision be vacated. Therefore, I respectfully dissent.

[¶ 17] We are not required to vacate a judgment every time we find an error in the trial court's rhetoric or order of factfinding. *See In re Joshua B.*, 2001 ME 115, ¶ 12, 776 A.2d 1240. A preserved error is reversible and not harmless only if a "substantial right" of the objecting party is affected. *Id.* ¶ 10, 776 A.2d 1240; *State v. Phillipo*, 623 A.2d 1265, 1268 (Me.1993);

*State v. Zinck*, 457 A.2d 422, 426 (Me. 1983). *See also* M.R. Civ. P. 61; M.R.Crim. P. 52(a); M.R. Evid. 103(a). "Any party claiming error must demonstrate prejudice from the error." *In re Joshua B.*, 2001 ME 115, ¶ 10, 776 A.2d 1240; *Phillips v. E. Maine Med. Ctr.*, 565 A.2d 306, 308 (Me.1989); Field & Murray, *Maine Evidence* § 103.5 (2000 ed.).

[¶ 18] In this case, the mother's brief presents a generalized discourse on the law regarding the proper order of factfinding. However, that brief makes absolutely no reference to the specific facts of this case and no effort to demonstrate how any "substantial right" of the mother was prejudiced, in any way, by the trial court's misallocation of the order of factfinding. The mother's rhetorical attack on the court's order of factfinding, and her avoidance of discussion of the facts of this case is fully understandable. Those facts are very bad from her perspective. Let there be no mistake; the trial court in this case had plenty of evidence of parental unfitness, and easily found parental unfitness established by the requisite clear and convincing evidence standard of proof. Most of the trial court findings address parental unfitness, not best interest.

[¶ 19] The record indicates that the mother has a long and continuing history of subjecting herself to sexually and physically abusive relationships. In its findings, the court referred to this history several times in support of its determinations that the mother is unable to parent or protect Michelle. Beyond this history of abusive male relationships, the court found that the mother herself had significant mental health deficits and a narcissistic focus, with her needs being given priority over those of her child. Separately, the court determined that the mother had continually failed to attend and fully participate in counseling and rehabilitation activities, de-

spite counseling and rehabilitation services having been offered to her over a number of years. In addition, the court determined that Michelle is a special needs child who needs protection, support, and services that her mother cannot give her and that the mother will not be able to provide within a time reasonably calculated to meet the daughter's needs.

[¶ 20] With this history of abuse, neglect, and deprivation, it is hardly surprising that the mother's counsel did not even try to review the facts of the case to suggest how the court's misordering of factfinding resulted in a substantial injustice or in any way prejudiced the mother. No such claim is supportable on this record. Without the mother demonstrating that a substantial right of hers had been affected or that she has been prejudiced in some way by the error which she asserts, any error in the court's misordering of factfinding is harmless.

[¶ 21] The Court's opinion points to the trial court's comments, at the close of the termination hearing—comments not repeated in its factfindings—that "[t]his is not an easy case." That may be so. Most termination of parental rights cases are very difficult for the parties and the court. But that observation, at the close of the hearing, cannot be used to suggest that factually this case is close. Certainly, the mother, in her brief, does not try to make such a claim. Even if the trial court's comments at the close of hearing suggested that, at that moment, the trial court thought there were close issues in the case, further reflection and the court's findings demonstrate that the trial court did not view this as a close case.

[¶ 22] Notably, in its findings, the trial court focused heavily on State's exhibit # 2, an extensive psychological report, painting a very negative picture of the mother. The trial court noted "the evaluation carries great weight in support of this court's final conclusion." Among other things, that report addressed "[the mother's] long history of engaging in extremely abusive relationships with men and exposing her children to this abuse, despite receipt of significant professional intervention to help her cope with the problem."

[¶ 23] This case is very unlike *Scott S.*, where a majority of this Court ruled that a similar error in the trial court's misordering of factfinding was not harmless, because in that case, there was an available competent parent to perhaps provide some care and support for the child. Here, the findings that the mother is an unfit and incompetent parent, based on clear and convincing evidence, are not contested in the mother's brief on this appeal. In such a circumstance, any error in the trial court's misallocation of the order of factfinding is certainly harmless. Accordingly, I would affirm the trial court's judgment.