STATE OF MAINE
HANCOCK, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-2003-17
AP-2003-18
AP-2003-19
AP-2003-20

DARLING'S,                          )
d/b/a DARLING'S AUTO MALL            )
                                     )
                                     )
            Plaintiff/Appellee       )
                                     )
                                     )                DECISION AND
v.                                   )                ORDER
                                     )
DAIMLER CHRYSLER MOTORS              )
COMPANY, LLC,                        )
                                     )
                                     )
            Defendant/Appellant)

This matter is before the Court on the Defendant's, Daimler Chrysler Motors Company LLC (herein, "Chrysler") appeal pursuant to Rule 76D of the Maine Rules of Civil Procedure from judgment entered by the District Court on September 3, 2003, in favor of the Plaintiff, Darling's. Chrysler contends that Darling's is not entitled to supplemental reimbursement for these four warranty claims because Darling's failed to provide sufficient or reasonable documentation to verify these claims pursuant to 10 M.R.S.A. §1176.[1] A hearing was held on this matter on March 26, 2004.

---

[1] The United States District Court in addressing the long, complex, and litigious history of the enactment of 10 M.R.S.A. §1176 described the following ongoing dispute, which is present here:

> the Manufacturers and Dealers have been engaged for nearly three decades in Maine in an elaborate and contentious game of economic, political, and legal chess. The battle lines in this dispute have been drawn over how much money the Dealers will receive back from the Manufacturers when performing work under manufacturer warranty.

> Since the parties themselves have been unable over the course of the last three decades to negotiate satisfactorily their conflicting positions in the warranty reimbursement area, they have each periodically sought to enlist the support of the legislative and judicial arms of government. Each legislative action has been followed by resort to the judicial branch, spawning new legislation and new judicial rulings, a seemingly never ending cycle, perfectly exemplified by the instant case.

Alliance of Automobile Manufacturers v. Gwadosky, docket number 03-154-B-W, *3-4 (D. Me., Feb. 13, 2004) (J. Woodcock).

1

## Background

This appeal concerns a motor vehicle dealer's requests for "supplemental" reimbursement from the manufacturer for warranty repairs pursuant to 14 M.R.S.A. §§7481 et seq. and 10 M.R.S.A. §1176 (warranty reimbursement between motor vehicle franchisor and franchisee). Essentially, the dispute arises from Darling's submissions of claims for warranty reimbursement, which were not fully allowed by Chrysler. Darling's is now seeking to recover the difference between the amount paid by Chrysler and the amount which represented Darling's' alleged customary charges for labor and parts charged on non-warranty work.

Darling's routinely submits claims for warranty reimbursement through Chrysler's computerized system, the Dealer Information Access Link (DIAL), through which Darling's received reimbursement on the four claims at issue. Darling's also submitted an additional claim for "supplemental reimbursement" on these four claims at issue, which Chrysler denied, stating Darling's "intentionally" failed to provide sufficient information to make it practicable for Chrysler to match these claims to Darling's prior submissions through DIAL and to verify that they were properly payable.

Darling's is a franchisee of Chrysler at its Ellsworth location. As such, the provisions of Maine's auto franchise act (10 M.R.S.A. §§1171 et seq.) apply here. However, only §1176 is at issue on this appeal.

As a franchisee, Darling's is required by contract and statute to provide warranty repairs to purchasers of Chrysler's products. The "supplemental reimbursement claims" at issue were requests for warranty parts and labor provided by Darling's to the purchasers of Chrysler products. Darling's practice is to submit its warranty claims to

Chrysler through DIAL. The data that a dealer may input into the DIAL system is limited by fixed variables, which a dealer is unable to adjust. The DIAL system contains a fixed variable for labor reimbursement requests. The DIAL system applies Chrysler's own flat rate time manual. Darling's uses a different flat-rate manual, the Motor Times Manual, to determine the cost of labor.

The Motor Time Manual uses different time allowances for various repairs than the Chrysler time manual. Darling's' Motor Time Manual only fixes the time allowance, *not* the hourly rate. The DIAL system does not recognize the Motor Manual time allowances. Therefore, after putting its preliminary submissions into the DIAL system, Darling's submitted a supplemental claim to recover the difference between the amount paid by Chrysler (determined by the Chrysler time manual) and the amount which represented Darling's customary charges for labor (determined by the Motor Manual) and parts charged on its non-warranty work.

These four claims were tried together before the District Court on June 18, 2003. On July 18, 2003, both parties submitted post-trial briefs. On August 4, 2003, the District Court issued a Memorandum of Decision, but reserved judgment and invited Darling's to supplement the record regarding its practice of adding 8% to its labor charges to Chrysler. Darling's' counsel submitted a letter explaining the 8% charge.[2] Chrysler objected to the Court's consideration of this letter, arguing it was an "untimely, non-evidentiary, post-trial supplementation of the record." The District Court issued a memorandum stating it was satisfied with Darling's explanation, and on September 3, 2003, the Court entered Judgment in Darling's favor on all four claims.

---

[2] The letter stated the 8% charge is a miscellaneous material fee that is added to the customer's bill as an 8% labor charge (capped at $40.00) to cover disposal of hazardous materials.

Chrysler argues that the District Court erred as a matter of law by: (1) not requiring Darling's to provide 100 sequential repair orders from non-warranty repairs to verify that it charges its non-warranty customers the same rates that it charges Chrysler; (2) not requiring Darling's to provide the vehicle identification number (VIN) for each vehicle repaired so that Chrysler can match the supplemental requests to Darling's' DIAL submissions; (3) permitting Darling's to use the Motor Times Manual to calculate labor charges; and (4) permitting Darling's to explain the 8% charge after the close of evidence.

## Discussion

### A. Standard of Review

Pursuant to Rule 76D of the Maine Rules of Civil Procedure Chrysler may appeal only on questions of law. Furthermore, "[a]ny findings of fact of the District Court shall not be set aside unless clearly erroneous." M.R.Civ.P. 76D. Thus, unless the District Court[3] committed an error of law in concluding that the rate of reimbursement claimed by Darling's was appropriate, the Motor Manual used by Darling's to determine the labor rate is legally permissible, that Darling's charged the same rates for warranty and non-warranty work, and that Darling's complied with the verification required by 10 M.R.S.A. §1176, then the judgment must be affirmed. *See e.g.* Buffington v. Arnheiter, 576 A.2d 751, 752 (Me. 1990) (holding that an appeal by a party from a District Court judgment to the Superior Court is restricted to questions of law).

---

[3] *See* Darling's Auto Mall v. Daimler Chrysler Motors, docket numbers 02-SC-193, 02-SC-194, 02-SC-213, and 02-SC-214 (Me. Dist. Ct., September 3, 2003) *(J. Staples)*.

## B. Maine Statutory Law

### 1. "Particularized Claim" Requirement[4] of 10 M.R.S.A. §1176

The State of Maine regulates warranty reimbursement levels by statute. *See* 10 M.R.S.A. §1176.[5] Chrysler contends that Darling's failed to provide sufficient or reasonable documentation to verify its supplemental claims as required by §1176; therefore, Darling's is not entitled to supplemental reimbursement. Specifically, Chrysler argues that Darling's needed to submit the vehicle identification number (VIN) for each vehicle repaired in its supplemental reimbursement claim and that Darling's needed to submit 100 non-warranty customer paid service repair orders to meet the reasonable verification requirement of §1176.

---

[4] The term "particularized claim" does not appear in §1176, but it is a term often used to describe the requirements of §1176.

[5] 10 M.R.S.A. §1176, entitled "Warranty" provides in pertinent part as follows:

> If a motor vehicle franchisor requires or permits a motor vehicle franchisee to perform labor or provide parts in satisfaction of a warranty created by the franchisor, the franchisor shall properly and promptly fulfill its warranty obligations, in the case of motor vehicles over 10,000 pounds gross vehicle weight rating, shall adequately and fairly compensate the franchisee for any parts so provided, and in the case of all other motor vehicles, shall reimburse the franchisee for any parts so provided at the retail rate customarily charged by that franchisee for the same parts when not provided in satisfaction of a warranty. Further, the franchisor shall reimburse the franchisee for any labor so performed at the retail rate customarily charged by that franchisee for the same labor when not performed in satisfaction of a warranty; provided that the franchisee's rate for labor not performed in satisfaction of a warranty is routinely posted in a place conspicuous to its service customer.

> Any claim made by a franchisee for compensation for parts provided or for reimbursement for labor performed in satisfaction of a warranty must be paid within 30 days of their receipt. When any such claim is disapproved, the franchisee that submitted it must be notified in writing of its disapproval within that period, together with the specific reasons for its disapproval. No franchisor may, by agreement, by restriction upon reimbursement, or otherwise, restrict the nature or extent of labor performed or parts provided so that such restriction impairs the franchisee's ability to satisfy a warranty created by the franchisor by performing labor in a professional manner or by providing parts required in accordance with generally accepted standards.

The Court notes that §1176 was amended in the last Legislative session. The version applicable at the time of the small claims hearing is stated above.

The Law Court has established that manufacturers are entitled to institute reasonable procedural requirements relating to warranty reimbursement, and the absence of an affirmative statutory command that a dealer adhere to a particular procedural requirement does not necessarily bar manufacturers from imposing such a requirement. *See e.g.* Acadia Motors, Inc. v. Ford Motor Co., 2002 ME 102, ¶11, 799 A.2d 1228 (holding that Ford was entitled to institute a surcharge to recover the higher costs of doing business in Maine caused by §1176's requirement of retail reimbursement). In Darlings v. Ford Motor Co., the Law Court concluded that Ford was within its right in imposing reasonable verification requirements and in imposing a reasonable time limit on the submission of warranty claims, although neither requirement appeared in the statute. 1998 ME 132, ¶6; 719 A.2d 111 (stating that accomplishing the objectives of §1176 necessarily requires that a dealer submit a claim that is sufficiently individualized to enable a manufacturer to satisfy its statutory obligations).

The Law Court has shed little light on the substance of a claim submitted by a dealer that is sufficiently individualized to enable a manufacturer to satisfy its obligations under §1176. In Acadia Motors, Inc. v. Ford Motor Co., the Law Court only tells us that a dealer's claim for reimbursement under §1176 simply for "all warranty parts" is insufficient. 844 F. Supp. 819, 825 (D. Me. 1994), *aff'd in part, rev'd in part on other grounds*, 44 F.3d 1050 1st Cir. 1995). On the other hand, a dealer's claim for reimbursement under §1176, which specified the dealer's original computerized claim number, the retail amount claimed, the amount the dealer received under the nationalized system, the nature of the claim (parts or labor), and the difference between the amount

6

received and the retail price was held to be sufficient for the manufacturer to satisfy its statutory obligations. Darling's v. Ford Motor Co., 1998 ME 232, ¶7, 719 A.2d 111.

The Law Court has made it clear that manufacturers, such as Chrysler may impose reasonable procedural requirements relating to reimbursement. The Court finds that the District Court correctly concluded that Darling's supplemental claims were sufficiently individualized to enable Chrysler to satisfy its statutory obligations under §1176. The Law Court approved the same information submitted by the dealer in Darling's d/b/a Darling's Bangor Ford v. Ford Motor Co., 1998 ME 232, ¶7, 719 A.2d 111.

Chrysler further argues that it is entitled to require Darling's to submit 100 non-warranty customer-paid service repair orders to verify that Darling's charges its non-warranty customers the same rates as it charges Chrysler. As support for its argument that this request was reasonable, Chrysler relies on the Law Court's decision in Darling's v. Ford Motor Co., 1998 ME 232, 719 A.2d 111[6] and points to the Legislature's most recent amendment to §1176.[7] The Court finds that Chrysler's argument must fail because at the time it denied Darling's supplemental claims for reimbursement, §1176 was silent as to suggested methods for a manufacturer to verify that the dealer charges the same

_____

[6] In Darling's v. Ford Motor Co., the Law Court held that §1176 does not prohibit a manufacturer from imposing reasonable verification requirements on dealers, such as a time limit on submitting claims for reimbursement; however, the opinion is silent on the issue of requiring a dealer to submit non-warranty customer-paid repair orders. 1998 ME 232, ¶18-19, 719 A.2d 111.

[7] 10 M.R.S.A.§1176 (2003) now contains the following amendment:

> For purposes of this section, the retail rate customarily charged by the franchisee for parts may be established by submitting to the franchisor 100 sequential nonwarranty customer-paid service repair orders or 60 days of nonwarranty customer-paid repair service orders, whichever is less in terms of total cost, covering repairs made no more then 180 days before the submission and declaring the average percentage markup.

7

rates to both warranty and non-warranty customers. Moreover, this verification procedure is not required as a result of the Law Court's ruling.

Furthermore, although not statutorily required to do so, Darling's did send Chrysler a large number of receipts of retail sales to non-warranty customers to show Chrysler that Darling's' charges for parts were "provided at the retail rate customarily charged by the franchisee for the same parts when not provided in satisfaction of a warranty." 10 M.R.S.A. §1176. Moreover, Chrysler accepted the same verification when it paid the amount agreeable to it on the claims initially submitted through the DIAL system. Accordingly, the District Court did not err in concluding that §1176 did not require Darling's to provide the verification requested by Chrysler.

### 2. Labor Retail Rate

The statute requires manufacturers to reimburse dealers for labor provided in the course of warranty work "at the retail rate customarily charged by that franchisee for the same labor when not performed in satisfaction of a warranty; provided that the franchisee's rate for labor . . . is routinely posted in a place of conspicuous to its service customer." 10 M.R.S.A. §1176. Chrysler argues that the District Court erred in concluding that Darling's was entitled to use of the "Motor Times Manual" to calculate its "inflated" labor charges to Chrysler. Chrysler further argues that Darling's does not post all of its "inflated" labor rate information in the service department as required by statute. See Appellant's Brief, p 18.

The United States District Court determined that use of a flat rate manual, such as Darling's Motor Times Manual comports with the legislative intent in enacting 10 M.R.S.A. §1176 and related statutes. Darling's v. Ford Motor Company, docket number

95-398-B-H, *14-18 (U.S. Dist. Ct., Me. 1998) (*J. Hornby*) (attached as Appellant's Exhibit E). "Flat Rate Pricing,"[8] which results from the use of either Darling's' Motor Times Manual or Chrysler's own Time Manual is not prohibited. *See* Darling's v. Ford Motor Company, 1998 ME 232, ¶8, n. 5, 719 A.2d 111 (approving use of a nationally recognized manual by a dealer even tough it exceeded the manufacturer's flat rate, as long as dealers comply with the statutory posting requirements).

Dealers are required by statute to notify their customers of their labor pricing practices. *See* 29-A M.R.S.A. §1805.[9] Specifically, §1805 requires dealers not only to

---

[8] "Flat Rate Pricing," as used here, refers to when a dealer consults sources for the number of hours to assign and then multiples that number by its hourly rate regardless of the amount of time actually spent and regardless of the amount of time the manufacturer thinks is appropriate. Darling's v. Ford Motor Company, 1998 ME 232, ¶8, n.5, 719 A.2d 111; *see also* 29-A M.R.S.A. §1801(2).

[9] 29-A M.R.S.A. §1805 (1996 & Supp. 1997) provides:
1. Form of notice. A repair facility must post the following notice in a place where it is reasonably likely to be seen by customers. The notice must be completed with information on charges and printed so that it is conspicuous and can be read by the average person.

The following form must be used:
"NOTICE TO OUR CUSTOMERS IS REQUIRED UNDER STATE LAW"
Before we begin making repairs, you have a right to put in writing the total amount you agree to pay for repairs. You will not have to pay anything over that amount unless you agree to it when we contact you later.

Before you pay your bill, you have a right to inspect any replaced parts. You have a right to take with you any replaced parts, unless we are required to return the parts to our distributor or manufacturer.

We can not install any used or rebuilt parts unless you specifically agree in advance.

You cannot be charged any fee for exercising these rights.

WE CHARGE $ PER HOUR FOR LABOR. (We round off the time to the nearest.)

2. Flat Rate. The notice must also contain the following if it applies:
"We also charge a flat rate for some repairs. Our service manager will explain what a flat rate is and show you how much it may cost you. A flat-rate charge may not match the time actually spent repairing your vehicle. PLEASE ASK US WHETHER WE WILL CHARGE YOU BY THE HOUR OR AT A FLAT RATE."

3. Availability of guide. The notice must also contain the following:
"The current edition of the National Automobile Dealer's Association Official Used Car Guide New England Edition is available for your review upon request."

9

post their hourly charges for labor, but also to notify consumers about "flat rate" pricing. §1805(2) directs dealers to notify consumers when flat rate pricing is used and to indicate that information about flat rate pricing is available upon request. Darling's may use flat rate pricing by way of the Motor Times Manual, as long as it complies with the notification requirements of §1805.

The Court finds that Darling's use of the Motor Times Manual, which is nationally recognized, to determine its time allowances for various repairs to calculate its retail labor charges to Chrysler is legally permissible. If Darling's is charging non-warranty customers too much by using the Motor Times Manual, as Chrysler contends, then market forces will make the appropriate correction. 10 M.R.S.A. §1176 only requires that warranty and non-warranty customers be charged the same retail labor rate. The District Court did not commit clear error in concluding that Darling's charged the same rates for warranty and non-warranty work. The record shows that Darling's posted its labor rate information in the service department as required by 10 M.R.S.A. §1176 and 29-A M.R.S.A. §1805(1).[10]

---

[10] *See* Appellee's Brief, p. 2, 5-6 (citing to the trial record to show that the actual hourly rate charged by Darling's to both warranty and non-warranty customers is posted in its service department in accordance with Maine Law). It is Chrysler's contention that Darling's did not comply with the statutory posting requirements; therefore, it argues Darling's is not entitled to reimbursement on its supplemental claims for warranty work. Specifically, Chrysler argues that the Motor Times Manual does not include a charge for all repairs and that in those instances Darling's falls back on Chrysler's time manual and inflates the charges by 33-50%. Chrysler contends that in these instances Darling's must provide its own time manual to the consumer and explain that it inflates its charges. Chrysler contends that based on these facts Darling's did not comply with the statutory posting requirements.

The Court finds that Chrysler's argument must fail. 10 M.R.S.A. §1176 only requires dealers to notify their consumers about their labor pricing practices. 29-A M.R.S.A. §1805(1) requires dealers to post a notice that specifies the hourly charge. §1805(2) only directs dealers to notify consumers when flat rate pricing is used and to indicate that such information is available to consumers upon request. The parties do not dispute that Darling's posted notice of its labor pricing practices in accordance with §1805, rather Chrysler disputes Darling's reliance on the Motor Times Manual. §1805(2) does not require Darling's to provide its customers with Chrysler's own time manual as Chrysler contends. The Court finds that Darling's has complied with the statutory posting requirements.

## 3. *8% Miscellaneous Materials Fee*

Chrysler argues that the District Court erred as a matter of law by allowing Darling's to supplement the record after the close of evidence to explain its practice of adding an 8% miscellaneous materials fee to its labor charges in its claims for supplemental reimbursement. Once the District Court received Darling's explanation, the Court concluded that Darling's had complied with §1176.

Maine Rule of Small Claims Procedure 6(b) governs the rules of evidence at a small claims hearing in District Court and states the following procedure:

> (b) Evidence. The rules of evidence, other than those with respect to privileges, shall not apply. The court may receive any oral or documentary evidence, not privileged, but may exclude any irrelevant, immaterial, or unduly repetitious evidence. The court shall assist in developing all relevant facts. The hearing shall be conducted in a manner designed to provide the parties with full opportunity to present their claims and defenses.

The District Court's post-hearing inquiry to clear up the ambiguity of the 8% miscellaneous materials fee on Darling's labor charges in its supplemental claims for reimbursement is consistent with the informality of small claims practice where the rules of evidence (other than privileges) do not apply. The District Court did not commit an error of law in allowing Darling's to submit a post-hearing explanation[11] of this 8% fee.

---

[11] Mr. Darling submitted the following explanation to the District Court:

> The miscellaneous materials fee is an additional 8% labor charge (capped at $40.00) that we add to the customer's bill to cover disposal of hazardous materials (oil, dirty rags, contaminated gasoline, etc.), cleaning solvents, adhesives, fasteners, etc."

*See* Appellant's Brief, Exhibit B.

## Conclusion

The District Court correctly concluded that the rate of reimbursement claimed by Darling's was appropriate, the Motor Times Manual used by Darling's to determine the labor rate is legally permissible, that Darling's charged the same rates for warranty and non-warranty work, and that Darling's complied with the verification required by 10 M.R.S.A. §1176.

Accordingly, the entry is:

Appeal **DENIED**. Decision of the Ellsworth District Court **AFFIRMED**.

The Clerk may incorporate this Decision and Order into the docket by reference.

DATED: May 10, 2004

_____
Justice, Maine Superior Court

FILED &
ENTERED

MAY 1 0 2004

SUPERIOR COURT
HANCOCK COUNTY

12