MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2018 ME 51
Docket:        And-17-509
Submitted
  On Briefs:   April 10, 2018
Decided:       April 17, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILD OF PORTIA L.


PER CURIAM

[¶1]  Portia L. appeals from a judgment of the District Court (Lewiston, *Dow, J.*) terminating her parental rights to her daughter pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i)-(ii) (2017).  She challenges the sufficiency of the evidence to support the court's finding of parental unfitness and its determination that termination is in the child's best interest.[1]  We affirm the judgment.

[¶2]  Based on competent evidence in the record, the court found by clear and convincing evidence that the mother (1) is unwilling and unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs and (2) is unwilling and unable to take responsibility for the child within a time which is

---

[1]  The court entered a judgment terminating the father's parental rights to the child on November 14, 2017.  The father does not appeal from that judgment.

reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii). The court also found that termination of the mother's parental rights is in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a). We review factual findings supporting the unfitness determination for clear error and apply the same standard to the factual findings supporting the best interest determination. *See In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260. We review the court's ultimate conclusion that termination is in the child's best interest for an abuse of discretion. *See In re Anastasia M.*, 2017 ME 213, ¶ 2, 172 A.3d 922.

[¶3] The court based its determinations on the following findings of fact:

> The mother remains homeless. . . . It took the mother a long time to resign herself to the reality that she needed to apply for housing assistance. . . . It is impossible to say when, precisely, she will obtain suitable housing.

> Even if she found housing today, it would be at least months before jeopardy could possibly be alleviated. If everything went perfectly, there would have to be an inspection, visits in the home, and a trial placement. The mother would have to show that she can keep the place safe and clean, and that she can meet the child's needs for longer than an hour and a half at a time. It is a long way from here to there.

> As for the mother understanding the risk posed by the child's father, it turns on a question of credibility. At the time of the TPR trial, the mother was within a week or two of finishing the non-offender, chaperone class. . . . She only started it around the time of the filing of the TPR petition, but the delay is not her fault.

There were problems with class space availability that were beyond her control. She has attended the chaperone class consistently, and she is currently saying all of the right things. She says she has gained a greater understanding of the child's father and his manipulative ways. She has prepared a safety plan as part of the chaperone class.

Unfortunately, it is hard to believe the mother when she says she is through with the child's father, and the Court does not believe her.

Still, from the first week of January, 2017, and for two months, she moved in with the child's father. She testified that she was dragged by the child's father to his father's home against her will. She testified that her two months in that home were very stressful. She called it a crack house. She said she would come home and smell chemicals and baking soda and then see [the father] and his father sitting on the couch. She said that she left the home after a disagreement with the child's father over her friendship with [an ex-boyfriend]. The Court believes this must have been a stressful time for the mother.

The Court is very concerned that she never disclosed these extreme stressors with her counselor. . . . The Court finds that the mother actively hid her ongoing relationship with the child's father from her counselor. Other major unexplained discrepancies between the mother's testimony and the counselor's included the number and names of friends with whom the mother has lived. It is clear and convincing to the Court that the mother has a lot to hide. The mother's judgment about who to spend her time with seems to be driven much more by her desperate need to be loved than her desire to reunify with the child. While the counselor testified that the mother is making good progress with honesty, the Court must, unfortunately, disagree.

The risk of harm presented by the mother's tendency to expose the child to the child's father or a dangerous person like him is unalleviated.

4

> [The child] needs permanency. She has been in her grandmother's care for around 19 months. [The child] needs structure, stability, and routine. The mother is out of time to show that she can provide these.
>
> The GAL believes that termination of the mother's rights to [the child] is in the child's best interest. The clear and convincing evidence supports this. . . . The permanency plan shall be adoption.

[¶4] Given these findings and the court's other specific findings of fact, all of which are supported by competent evidence in the record, the court did not err in its finding of parental unfitness, nor did it err or abuse its discretion in determining that termination of the mother's parental rights, with a permanency plan of adoption, is in the child's best interest. *See In re Logan M.*, 2017 ME 23, ¶ 3, 155 A.3d 430; *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

The entry is:

> Judgment affirmed.

---

Lorne Fairbanks, Esq., Lewiston, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services