MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2018 ME 165
Docket:        Ken-18-238
Submitted
 On Briefs:    November 28, 2018
Decided:       December 20, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.


ADOPTION OF SHAYLEIGH S. et al.


PER CURIAM

[¶1] The father of S.S. and P.S. appeals from judgments entered by the Kennebec County Probate Court (*E. Mitchell, J.*) terminating his parental rights in anticipation of an adoption pursuant to 18-A M.R.S. § 9-204(a)-(b) (2017)[1] and 22 M.R.S. § 4055(1)(A)(2), (B)(2)(a), and (B)(2)(b)(ii) (2017). He contends that the court erred in its use of statements made by S.S. during an *in camera* interview and that there was insufficient evidence to support the court's finding of parental unfitness as to both children. We affirm the judgments.

## I. CASE HISTORY

[¶2] This appeal arises from private adoption proceedings and petitions to terminate the father's parental rights brought by the mother and stepfather of S.S. and P.S. in the Kennebec County Probate Court. The petitions sought to

---

[1] Title 18-A will be revised and recodified as Title 18-C effective July 1, 2019. *See* P.L. 2017, ch. 402.

terminate the parental rights of the children's biological father, thereby freeing the children for adoption by their stepfather. A one-day hearing was held on the mother and stepfather's petitions on May 16, 2018, at which the mother and father testified. On the same day, the court interviewed S.S. *in camera*.

[¶3] On May 30, 2018, the court issued two judgments, one for each child, terminating the father's parental rights. In its judgments, the court recited the testimony of the witnesses and also issued what it explicitly characterized as findings, applying the requisite clear and convincing evidence standard of proof. *See In re Child of Portia L.*, 2018 ME 51, ¶ 2, 183 A.3d 747. Because a court's findings will be affirmed on appeal if they are supported by any evidence in the record, *see Adoption of Isabelle T.*, 2017 ME 220, ¶ 30, 175 A.3d 639, the recitation of testimony in a judgment is unnecessary and could be viewed as limiting the support for certain findings to the recited testimony. If a court accepts a fact stated in testimony and the fact is important to the judgment, it is best stated as an affirmative finding rather than as a reference to testimony.

[¶4] In both judgments the court made the following findings of fact, which are supported by competent evidence in the record:

> Based upon clear and convincing evidence presented at the hearing, this Court concludes that termination of the parental rights of [the father], thereby freeing the child for adoption by the petitioners, would be in the child's best interests. This Court

specifically finds that the [father]'s failure to make any attempt to establish a family relationship with the child, or contribute in any way toward the child's financial support, constitutes clear and convincing evidence that the [father] has been unwilling or unable to take responsibility for the child within a time reasonably calculated to meet the child's needs.

In reaching its decision, this Court has considered carefully the needs of this child, the child's age and relationship with the [father] and with the petitioners, and the amount of time spent with each of the parties and the child's ability to integrate into the petitioner's home.

. . . .

The parents of [S.S.] and [P.S.] were divorced on July 20, 2015. [The father] was awarded visits every 3rd weekend and three weeks in the summer. He also was ordered to pay child support of $87.50 weekly for his two children. [The father] had both children for a visit at his mother's home in August of 2015. He testified that he attempted to visit his children in September of 2015 but found no one home when he arrived. He testified that after a second unsuccessful attempt to visit, he ceased efforts to visit and pay child support. For almost three years, the father failed to make responsible attempts to establish a relationship with his children and did not contribute to their financial support. The disability needs of his young son [P.S.] make this absence more damaging.

. . . .

Both parents acknowledged the father's criminal mischief complaint for destruction of many household items with an axe. Both the mother and the daughter [S.S.] testified that these events caused them to be fearful.

4

[¶5]   In its judgment regarding S.S., the court made the following additional findings:

> Daughter [S.S.] is 17 years old.  She testified *in camera* that she does not want her father in her life and fears for herself and her little brother.  She testified that she wants to continue her current family structure and to be adopted by her stepfather.  She testified that he is supportive of her successes in school and knows how to take care of her brother's special needs.  She views her stepfather as her father.
>
> . . . .
>
> The issue of continuity for caring for his disabled son and for parenting his teenage daughter do go to the child's best interest standard.  In light of the father's lack of participation in any way in the care or financial support of both of his children for almost three years, the Court finds that it is in the daughter's best interest to formalize her relationship with her stepfather.  [S.S] acts as an important care taker of her brother.  The father has consistently demonstrated a lack of understanding and appreciation of the special needs of his son and has difficultly dealing with his daughter's interactions with her brother.  He is highly critical of [S.S.]'s treatment of her brother.
>
> The daughter [S.S.] can petition for this adoption on her own in just a year when she reaches 18.  She stated unequivocally that she wants adoption now based on her past experiences with her biological dad and her recent experiences with her stepfather.

[¶6]   In its judgment regarding P.S., the court made the following additional findings:

> [A pediatric center] diagnosed [P.S.] with [serious disabilities].  Although the father had the names of providers of services to his son, he made no effort to reach out to see what

assistance he could provide or to contribute financially. He made no inquiries to the mother about the son's well-being.

The mother testified that the son's issues require structured care and careful transitions. When the father's attorney asked him what plans for reunification he had for his 7 year old son, *[the father] testified that if the court took too long to decide, he would not wait for a gradual reintroduction but would just take him, in spite of hearing the testimony about his son's difficultly with transitions.*

. . . [T]he stepfather of this child[] has been in his life since marriage to his mother in 2015 after her divorce. He is a retired veteran who provides all the care to the disabled son while [the] mother works full time. He takes the child to all his medical appointments and follows the instructions for assisting the child both in school and at home. No evidence was presented to the court that he was unsuitable to parent this child.

. . . .

The issue of continuity of care for [the father's] disabled son does go to the child's best interest standard. In light of the father's lack of participation in any way in the care or financial support of a severely disabled son for almost three years and his testimony that he would not consider a reunification period before re-entering his son's life should the Court delay its opinion, the Court finds that it is this child's best interest to remain legally in a secure, sensitive and consistent environment. The father has consistently demonstrated a lack of understanding and appreciation of these special needs.

(emphasis added).

[¶7]  Following the judgments, the father timely appealed. *See* 18-A M.R.S. § 9-309 (2017); M.R. App. P. 2B(c)(1).

## II. LEGAL ANALYSIS

A.     Interview with S.S.

[¶8]  The father challenges the court's use of the statements S.S. made during her *in camera* interview.  He argues that the statements were not made under oath and that he did not have the opportunity to cross-examine S.S.  He contends that the court's use of the statements "as evidence of a pertinent fact is beyond the intent of the in camera interview statute" because "[a] plain reading of the [authorizing] statute would seem to state that it is only the adoptee's attitudes and desires that a court may take into account."

[¶9]  In adoption proceedings, a probate judge must interview a potential "adoptee who is 12 years of age or older, outside the presence of the prospective adoptive parents to determine the adoptee's attitudes and desires about the adoption and other relevant issues."  18-A M.R.S. § 9-305(a) (2017).  In this case, the court interviewed S.S. *in camera* during the hearing on the petitions for termination of parental rights and discussed, among other things, an incident where her father picked her up by her neck.  In its two judgments terminating the father's rights to S.S. and P.S. respectively, the court said that S.S. "testified *in camera* that her father did pick her up with a choke hold."

[¶10]   While the statements S.S. made regarding the choking incident ostensibly fall within the "other relevant issues" part of statute, the court exceeded the scope of the statute by relying on these statements for more than just context that explained the attitudes and desires of S.S.  Accordingly, it was error for the court to refer to the unsworn statements made by S.S. as testimony.

[¶11]   The father, however, has failed to demonstrate how he was prejudiced by the court's use of the statements, and it is highly probable that the statements did not affect the outcome of the case.  *See In re M.B.*, 2013 ME 46, ¶ 34, 65 A.3d 1260; *see also Greaton v. Greaton*, 2012 ME 17, ¶ 7, 36 A.3d 913 ("In appealing a judgment, it is not enough to challenge procedural errors allegedly made by the trial court without also showing actual error in the judgment."); *In re A.M.*, 2012 ME 118, ¶ 25, 55 A.3d 463 ("The mother's failure to explain on appeal how her absence or the officer's testimony [concerning her absence] could have affected the trial or its outcome is relevant in determining on appeal whether she has been deprived of due process.").

[¶12]   The mother's testimony, including her testimony about the choking incident involving S.S., was substantively the same as what S.S. said *in camera* and was subject to cross-examination by the father. *See In re Elijah R.*,

620 A.2d 282, 285-86 (Me. 1993) (holding that admission of inadmissible evidence was harmless when the information was "duplicated by other sources in the record"). The father was also able to present his contradictory testimony after the mother testified.[2] Therefore, the errors the court made with regard to the statements given by S.S. during the *in camera* interview were harmless. *See In re M.B.*, 2013 ME 46, ¶ 34, 65 A.3d 1260*; In re A.M.*, 2012 ME 118, ¶ 25, 55 A.3d 463.

B.    Sufficiency of the Evidence

[¶13]  The father argues that the evidence does not support the court's finding in both judgments that his "failure to make any attempt to establish a family relationship with the child, or contribute in any way toward the child's financial support, constitutes clear and convincing evidence that [he] has been unwilling or unable to take responsibility for the child within [a] time reasonably calculated to meet the child's needs."  Specifically, his complete argument is as follows:

> The evidence showed and the court found that the father did have a visit in August of 2015 after the divorce.  The father testified that when he went to see the children in September, no one was home although he checked more than once between 3 and 6.  The mother testified that she moved to a new residence without

---

[2] The father admitted to picking up S.S. by the neck when she was twelve, but asserted that it was by the back of her neck and he only did so because she was hurting her younger brother, P.S.

notifying the father despite the explicit language in the Divorce Judgment that she do so. The father also testified that he attempted during September of 2017 to see the children in accordance with his parental rights and was told to talk to her attorney. It is therefore clear that the father has wanted a relationship but was hindered by the petitioner and is not "unable to protect the child from jeopardy[.]"[3]

(citations omitted).

[¶14] "When the burden of proof at trial is clear and convincing evidence, our review is to determine whether the fact-finder could reasonably have been persuaded that the required findings were proved to be highly probable." *Adoption of L.E.*, 2012 ME 127, ¶ 11, 56 A.3d 1234. The father does not take issue with the court's best interest findings.

[¶15] The court here heard evidence, much of it through the father's own admissions, supporting a finding by clear and convincing evidence that he neither sought nor had meaningful contact with his children for more than two years. While the father blames the mother for this lack of contact, he took no affirmative steps available through the judicial system to remove any perceived impediments to maintaining relationships with his children, choosing instead

---

[3] In his last sentence, the father misstates the grounds upon which the court found that he was an unfit parent. We infer from the issue statement in his brief that he is challenging the court's findings that he was "unable or unwilling to take responsibility for the child[ren] in a time reasonably calculated to meet [their] needs."

to withhold any child support payments despite having the ability to pay. He admitted that he never contacted the mother when he found that the children were not home when he expected to have a visit in the fall of 2015. Furthermore, the mother testified that the father's visits were sporadic and he was supposed to call first.

[¶16] Although the mother moved without telling the father, she testified that she did so in December 2016, more than a year after his last attempted visit, and that she kept the same phone number. After the mother and stepfather filed their petitions to terminate the father's parental rights—two years after his last visit with the children—the father sent a text message to the mother requesting a visit with the children, but, when she asked him to contact her attorney, he never did. In light of this and other evidence in the record, the court reasonably could have been persuaded that it was highly probable that the father is unwilling or unable to take responsibility for his children in a time reasonably calculated to meet their needs.

C.     Sequence of Fact-finding

[¶17] Although not raised by the father on appeal, one other aspect of the court's decision requires comment. In its orders, the court addressed the children's best interests before making a finding of parental unfitness. We have

previously stated that, notwithstanding the sequence of issues stated in 22 M.R.S. § 4055(1)(B)(2), the trial court must find parental unfitness before it proceeds to consider the best interests of the children. *See Adoption of Hali D.*, 2009 ME 70, ¶¶ 4-5, 974 A.2d 916; *In re Michelle W.*, 2001 ME 123, ¶ 11, 777 A.2d 283.

[¶18] Because the father does not challenge the court's misallocation of fact-finding, our review is for obvious error. *See In re Joshua B.*, 2001 ME 115, ¶ 9, 776 A.2d 1240. Here, the trial court made the required finding of parental unfitness by finding by clear and convincing evidence that the father is unable or unwilling to take responsibility for his children in a time reasonably calculated to meet their needs. As such, the father was not deprived of a fair trial and was not treated unjustly as a result of the trial court's erroneous sequence of its fact-finding. *See id*. ¶ 12.

The entry is:

Judgments affirmed.

---

Randy G. Day, Esq., Garland, for appellant father

Justin E. French, Esq., Ranger Copeland French, P.A., Brunswick, for appellees mother and stepfather

Kennebec County Probate Court docket numbers A2017-4635-1 and A2017-4636-1
FOR CLERK REFERENCE ONLY