MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:     2020 ME 5
Docket:       Ken-19-262
Argued:       December 5, 2019
Decided:      January 9, 2020

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

ADOPTION BY STEFAN S.

JABAR, J.

[¶1] The father of two children appeals from judgments of the Kennebec County Probate Court (*E. Mitchell, J.*) terminating his parental rights in anticipation of adoptions pursuant to 18-A M.R.S. § 9-204(b) (2018); 22 M.R.S. § 4055(1)(A)(2), (B)(2)(a), and (B)(2)(b)(ii) (2018).[1] He argues on appeal that the record contains insufficient evidence to support the court's findings that he is an unfit parent and that termination of his parental rights is in his children's best interests. *See* 18-A M.R.S. § 9-204(b) (2018); 22 M.R.S. § 4055(1)(B)(2). He also contends that the court erred as a matter of law by reaching these two

---

[1] The Maine Probate Code was recently repealed and recodified. P.L. 2017, ch. 402. This matter was fully litigated prior to the effective date of the recodified Probate Code. Therefore, all Probate Code citations in this opinion are to the repealed 2018 version, codified in Title 18-A of the Maine Revised Statutes. The relevant text is substantively unchanged in the new codification. *See* P.L. 2017, ch. 402, § A-2 (codified at 18-C M.R.S. §§ 9-103, 9-204, 9-302 (2019)); P.L. 2019, ch. 417, § A-103 (establishing effective date of September 1, 2019).

2

findings in an improper sequence, and by failing to consider open adoptions that would have left his parental rights intact. We affirm the judgments.

## I. BACKGROUND

[¶2] On July 30, 2018, the mother and stepfather of the children filed petitions to adopt the children the Kennebec County Probate Court, seeking to establish the stepfather as the children's legal father pursuant to 18-A M.R.S. § 9-103 (2018). Soon thereafter, the mother filed petitions to terminate the father's parental rights pursuant to 18-A M.R.S. § 9-204 (2018), thereby freeing the children for adoption by the stepfather. The father was duly served with notice of the petitions to terminate his parental rights, to which he registered his objection. The court held a one-day hearing on the matter on May 22, 2019. On June 10, 2019, the court entered judgments terminating the father's parental rights with regard to the children. The father did not file a motion for further findings of fact and conclusions of law, M.R. Civ. P. 52, or any other post-trial motion. The father timely appealed from both orders. M.R. App. P. 2B(c)(1).

[¶3] The following facts are drawn from the court's explicit findings and the trial record. *See Guardianship of Ard*, 2017 ME 12, ¶ 15, 154 A.3d 609 ("In the absence of a motion for findings of fact, see M.R. Civ. P. 52(a), we assume

that the court found all of the facts needed to support its decision if those facts are supported by competent evidence." (quotation marks omitted)).  The older child was born in 2006 and is developmentally disabled.  He attends public school, where he receives intensive special education services as part of an Individualized Education Program (IEP).  The younger child was born in 2009 and also has been diagnosed with genetic and behavioral disorders.  He attends a public school where his education is directed by an IEP and he receives one-on-one supervision at all times during the school day.  He exhibits aggressive behaviors and is sometimes violent.

[¶4]  The mother and father divorced in 2012, and a parental rights and responsibilities order was issued in conjunction with the divorce, awarding primary residence to the mother and contact rights to the father.  In practice, the amount of time that each child spent with the father varied over time.  Beginning in 2015, the father's contact with the children declined gradually.  The father has not seen the children since July 2016, and has had no communication with the children since May 2018.  This lack of contact is at least partially the result of the mother's conduct—the court found that she "wrongfully made it difficult for [the father] to contact her."  Since at least 2015, the children have resided primarily with the mother and stepfather.  The

4

stepfather is consistently involved in caring for the children and interacts on a daily basis with their educational and medical providers.

[¶5]  The two orders issued by the court are mirror images of one another except for the relevant child's name.  The court made the following findings with regard to both children:

> [T]he termination of the parental rights of [the father] thereby freeing the child for adoption by [the stepfather] would be in the child's best interests.  This Court also specifically finds that [the father's] failure to make any attempt to establish a family relationship with the child, or contribute in any way toward the child's financial support, constitutes clear and convincing evidence that [the father] has been unwilling or unable to take responsibility for the child within a time reasonably calculated to meet the child's needs.

[¶6]  The court also found that "[the father] has not taken the necessary steps in a reasonable time frame to care for his son with highly special needs well known to him.  He has been absent from his life for over two years and owes over $30,000 in child support."  Although the court noted that the mother had wrongfully made it difficult for the father to contact her or the children, the court found that the father "made no effort to legally enforce his rights or to contact [the child's] medical providers or his school."  The medical and educational professionals who worked with the children "had never met [the father]."  The court stated that both children "will need special care and

attention for the rest of [their lives]," and that the father "has done nothing to assist with this challenge and did not demonstrate a valid reason for his absence."

## II. DISCUSSION

### A. Legal Standard

[¶7] "When a private individual invokes court action to terminate parental rights . . . the court engages in state action that implicates the constitutionally protected liberty interest a parent has in parenting his or her child free from state interference." *Adoption of Isabelle T.,* 2017 ME 220, ¶ 3, 175 A.3d 639. These protections are not absolute. *Id.* ¶¶ 5-6. "A state may interfere with a parent's fundamental right to parent a child when the court makes a finding, by clear and convincing evidence, that the parent is unfit and the child's best interest will be served by state intervention to avoid harm to the child." *Id*. ¶ 6.

[¶8] Petitions for private adoptions in Maine Probate Courts are governed by the Adoption Act, 18-A M.R.S. §§ 9-101 to 9-315 (2018). The Adoption Act incorporates by reference 22 M.R.S. §§ 4050-4059 (2018), the statutory framework governing termination in child protection proceedings. 18-A M.R.S. § 9-204(b) (2018). In Title 18-A adoption proceedings,

"termination of parental rights occurs prior to the adoption in order to enable the child . . . to be legally available for adoption."[2] *Adoption of Isabelle T.,* 2017 ME 220, ¶ 9, 175 A.3d 639. In determining whether to terminate parental rights, the court engages in a two-step analysis, first making a finding of parental unfitness using the factors outlined in 22 M.R.S. § 4055(1)(B)(2)(b), and only then determining whether termination is in the best interests of the child, 22 M.R.S. § 4055(1)(B)(2)(a). *See Adoption of Shayleigh S.,* 2018 ME 165, ¶ 17, 198 A.3d 791.

[¶9] A court's finding of unfitness must be grounded in one or more of the following findings:

> (i) The parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time that is reasonably calculated to meet the child's needs;
>
> (ii) The parent has been unwilling or unable to take responsibility for the child within a time that is reasonably calculated to meet the child's needs; [or]
>
> (iii) The child has been abandoned; . . . .

22 M.R.S. § 4055 (1)(B)(2)(b).

---

[2] The Probate Court, according to statute, cannot grant an adoption petition absent the consent of each of the adoptee's living parents. 18-A M.R.S. § 9-302(a)(2) (2018). Such consent is not required, however, from a parent whose "rights have been terminated according under Title 22, chapter 1071, subchapter VI." 18-A M.R.S. § 9-302(b)(2). Thus, termination of a nonconsenting parent's parental rights is often a prerequisite to adoption under Title 18-A. Such is the case here. *See infra* Part II(D).

[¶10] We review factual findings regarding whether termination is in the best interest of a child for clear error. *Adoption of Isabelle T.,* 2017 ME 220, ¶ 30, 175 A.3d 639. A finding of parental unfitness is also reviewed for clear error, and we will find such an error "only if there is no competent evidence in the record to support it; if the fact-finder clearly misapprehended the meaning of the evidence; or if the finding is so contrary to the credible evidence that it does not represent the truth of the case." *Id.* "When the burden of proof at trial is clear and convincing evidence, our review is to determine whether the fact-finder could reasonably have been persuaded that the required findings were proved to be highly probable." *Adoption of Shayleigh S.,* 2018 ME 165, ¶ 14, 198 A.3d 791. The court's "ultimate decision to terminate parental rights" is reviewed for an abuse of discretion. *Adoption of Isabelle T.,* 2017 ME 220, ¶ 30, 175 A.3d 639*.*

B.      Sufficiency of the Evidence

[¶11] The father challenges the sufficiency of the evidence underpinning the trial court's findings that he was unfit and that termination would be in the children's best interests. Contrary to his contentions, the record evidence is such that the trial court "could reasonably have been persuaded that the required findings were proved to be highly probable." *Id.* ¶ 33*.* The court did

not err in reaching its findings, nor did it abuse its discretion in its decision to terminate the father's parental rights. *Adoption of Shayleigh S.*, 2018 ME 165, ¶ 14, 198 A.3d 791; *Adoption of Isabelle T.,* 2017 ME 220, ¶ 30, 175 A.3d 639.

1. Finding of Unfitness

[¶12]  Record evidence demonstrates that the father's efforts to maintain contact with his two children have been sporadic and ineffective.  Prior to 2016, he had regular contact with the children and took advantage of his contact rights.  After March 2016, he had virtually no in-person contact with the children and any phone contact was short and intermittent.  After June 2018, he had no direct contact with the children.  His efforts to maintain contact were limited to contacting the mother.  What little indirect contact did occur was a product of the efforts of the paternal grandparents.  The father moved to Florida in December 2016, to seek employment and work on his sobriety, staying for nearly two years.

[¶13]  The mother imposed roadblocks to the father contacting the children, severely curtailing the father's contact after he was arrested in March 2016.  She also moved to a new address in October 2017, and changed her phone number in June 2018.  The trial court acknowledged the wrongfulness of this conduct and took it into consideration in its orders.

However, the father's record of minimal contact with the children predated the imposition of these roadblocks. By mid-2015, his contact with the children had declined to, at most, one overnight visit per weekend. Further, after the mother cut off his contact, the father did not attempt to enforce his rights through the judicial system or otherwise try to pursue contact. He did not contact the maternal grandparents, the children's schools or medical providers, or the stepfather.

[¶14]  The court found that both children will need special care and attention for the rest of their lives, and the record demonstrates that their disabilities render change, uncertainty, and transition extremely difficult for both children. The trial court reasonably could have been persuaded that it was highly probable the father was either unwilling or unable to take responsibility for the children in a time reasonably calculated to meet their needs.

2.    Finding Regarding the Children's Best Interest

[¶15]  The significant special needs of the children are also relevant to the court's second core finding—that termination of the father's parental rights would be in the children's best interests. 22 M.R.S. § 4055(1)(B)(2)(a). The best interest factors considered in a Title 18-A proceeding are the same as those in a Title 22 proceeding:

In considering the children's best interests, the court is required to consider the needs of the children, including the children's age, the children's attachments to relevant persons, periods of attachments and separation, the children's ability to integrate into a substitute placement or back into their parent's home and the children's physical and emotional needs. Also relevant to the best interests determination is the harm the children may suffer if the parent's rights are not terminated, as well as the children's need for permanence and stability.

*Adoption of Isabelle T.,* 2017 ME 220, ¶ 49, 175 A.3d 639 (quotation marks omitted) (alterations omitted).

[¶16] The trial court considered the needs of each child, their respective ages and relationships with their parents and step-father, the time spent with the parties, and their ability to integrate into the mother and stepfather's home. The record evidence shows that both children, and the younger child especially, require consistency, routine, and predictability in order to function well in the home and in school. Strong coordination among the caregivers, educators, and medical providers is necessary in order for the children to coexist with their family members and peers, and to progress toward their social and educational goals. The evidence shows that the father has not contributed to those coordinated efforts, but that the stepfather has. The evidence further shows that sporadic contact with the father interferes with the children's routine and progress. With regard to the younger child, changes to routine correlate with

increased aggressive behaviors. In light of the evidence presented at trial, the trial court could reasonably have been persuaded that the required findings were proved to be highly probable, and thus did not clearly err in determining termination to be in the best interest of each child.

[¶17] Because the trial court did not clearly err in its determinations that the father has been unwilling or unable to take responsibility for the two children within a time reasonably calculated to meet their needs and that termination was in the best interest of each child, the trial court did not abuse its discretion in terminating the father's parental rights.

C.    The Court's Sequence of Findings

[¶18] The father next argues that the trial court erred as a matter of law by first determining that termination was in the best interest of each child and then finding that he has been unwilling or unable to take responsibility for the children within a time that is reasonably calculated to meet their needs. The father raises this challenge for the first time on appeal. *See supra* Part I. Therefore, we review for obvious error. *In re Joshua B.*, 2001 ME 115, ¶ 9-10, 776 A.2d 1240; *see* Alexander, *Maine Appellate Practice*, § 402(a) at 310 (5th ed. 2018); *see also MP Assocs. v. Liberty*, 2001 ME 22, ¶ 18, 771 A.2d 1040.

12

Obvious error is that which deprives a party of a fair trial or otherwise treats a party unjustly. *See Shayleigh S.*, 2018 ME 165, ¶ 18, 198 A.3d 791.

[¶19]  Title 22 § 4055(1)(B)(2) lists two findings as prerequisites to a termination of parental rights: first, that termination is in the best interest of the child; and second, that the parent has demonstrated unfitness in one of four ways.  22 M.R.S. § 4055(1)(B)(2).  Notwithstanding the order in which these two findings are laid out in the statute, the constitution requires that "a trial court must find parental unfitness before it proceeds to consider the best interest of the children." *Adoption of Shayleigh S.*, 2018 ME 165, ¶ 17, 198 A.3d 791; *see also Adoption of Hali D.*, 2009 ME 70, ¶¶ 4-5, 974 A.2d 916; *In re Michelle W.*, 2001 ME 123, ¶ 11, 777 A.2d 283.

[¶20]  In both of the trial court's judgments, it first stated that it found termination to be in the child's best interests.  Then, in a separate sentence, the trial court found that the father "has been unwilling or unable to take responsibility for the child in a time reasonably calculated to meet the child's needs."  However, the language of the trial court's order does not necessarily suggest that it made a finding as to the children's best interests before reaching the question of fitness; the record demonstrates that the trial court clearly understood that the two findings were distinct and that a finding as to fitness

must be reached before it could proceed to a best interest analysis.  At trial, the court stated, "[Y]ou don't even get [to] the best interest of the child standards until you deal with the termination standard."

[¶21]  The trial court's order and the record evidence do not support a conclusion that the father was denied a fair trial or subjected to a serious injustice.  The trial court made all required findings, correctly applying the standard of clear and convincing evidence to both the best interest prong and the fitness prong.  The trial court understood that these findings were independent of one another and a finding as to one should not inform the finding as to the other.  Therefore, any mistake made by the trial court in arranging its findings within the termination orders was not obvious error.  *Cf. In re Michelle W.,* 2001 ME 123, ¶¶ 8, 11, 777 A.2d 283; *In re Joshua B.,* 2001 ME 115, ¶ 8, 776 A.2d 1240.

D.    Necessity of Termination

[¶22]  Finally, the father argues that the trial court erred in concluding that his parental rights needed to be terminated in order for the stepfather to adopt the children.  Instead, the father argues, the trial court could have granted the adoption petition without terminating his rights, leaving the children with

14

three legal parents. This argument reflects a misunderstanding of Title 18-A adoption proceedings and is not persuasive.

[¶23] The Probate Court is a court of limited jurisdiction. *Marin v. Marin*, 2002 ME 88, ¶ 9, 797 A.2d 1265. The Adoption Act grants the Probate Court jurisdiction over adoption petitions. 18-A M.R.S. § 9-103(1)(a) (2018); *see also In re Melanie S.*, 1998 ME 132, ¶ 8, 712 A.2d 1036. Before the court may grant a petition for adoption, however, written consent is required from each of the adoptee's living parents, unless an exception is satisfied. 18-A M.R.S. §§ 9-302(a)(2), (b) (2018). A parent's consent is not required if his or her parental rights have been terminated pursuant to 22 M.R.S. §§ 4050-4059 (2018).[3] Limited by its statutory mandate, the Probate Court is left with two choices in the face of a nonconsenting parent: deny the petition for adoption because the petitioner has failed to prove that the nonconsenting parent is unfit or, if the petitioner has established that the parent is unfit and that adoption would be in the child's best interest, terminate the nonconsenting parent's parental rights, thereby obviating the need for the parent's consent. *See Adoption of Isabelle T.,* 2017 ME 220, ¶ 12, 175 A.3d 639 (noting that the

---

[3] The Title 22 termination procedures are incorporated by reference in 18-A M.R.S. § 9-204, which authorizes the Probate Court to terminate parental rights in conjunction with an adoption petition.

Adoption Act does not authorize rehabilitation or reunification efforts prior to or instead of termination of parental rights). We review a trial court's determination of its own authority de novo. *Bonner v. Emerson*, 2014 ME 135, ¶ 9, 105 A.3d 1023.

[¶24] Here, the father was a living parent of both prospective adoptees and, as such, the trial court could not grant either petition without his consent, which the father did not provide. 18-A M.R.S. § 9-302(a)(2). The mother filed petitions to terminate the father's parental rights, and the trial court granted those petitions. Only after the court determined that the father's consent was not legally necessary—because his rights had been terminated—could it proceed to consider the adoption petitions.

[¶25] The trial court did not have the authority to pursue the third option described by the father: an open adoption granted with his parental rights intact but without his written consent. Although the Maine Parentage Act contemplates more than two parents, the Adoption Code does not. Title 18-C M.R.S. §9-308 states that the effect of an adoption is to "divest[] the parent and child of all legal rights, privileges, immunities, duties and obligations to each other as parent and child, except an adoptee inherits from the adoptee's *former* parents if provided in the adoption decree." 18-C M.R.S. § 9-308(6)

(2019) (emphasis added). The Code contains no provision for parents who wish to "consent" to the adoption of their children by someone else, unless those consents are accompanied by voluntary termination of parental rights.

[¶26] The trial court did not err in failing to consider an adoption not authorized by law.

The entry is:

Judgments affirmed.

_____

Caleb J. Gannon, Esq., and John E. Baldacci, Jr., Esq. (orally), Lipman & Katz, Augusta, for appellant father

Maryellen Sullivan, Esq., and Joe Lewis, Esq. (orally), Port City Legal, Portland, for appellees mother and stepfather

Kennebec County Probate Court docket numbers A2018-4689 and A2018-4690
FOR CLERK REFERENCE ONLY